# The Merrimac Mining Co. of Lake Superior v. George F. Bagley.

*Stockholder—Liability.* A Stockholder, who was not one of the original subscribers to a Mining Corporation organized under the general mining law, is liable for any balance due upon assessments, after applying the proceeds of stock sold for default.—*Carson v. Arctic Mining Co.* 5 *Mich.* 288.

*Heard October 16th. Decided October 23d.*

Error to Wayne Circuit.

This was an action of assumpsit, brought by plaintiffs to recover of defendant, who was a stockholder by purchase, the balance of certain assessments claimed by said plaintiffs after the sale, on default, of defendant's stock.

The cause was tried without a jury, on the following stipulation:

"In Circuit Court for the County of Wayne, State of Michigan. The Merrimac Mining Company of Lake Superior, Plaintiffs, v. George F. Bagley, Defendant.

It is hereby stipulated by the parties plaintiff and defendant

in the above entitled cause, that on the trial thereof the following facts shall be admitted without proof:

That the plaintiffs are a corporation duly organized and established under the manufacturing and mining laws of the State of Michigan, with a capital of $500,000, divided into shares of $25 each;

That the statutes of this State and the by-laws of said company, so far as is necessary to authorize said company to make and collect assessments upon stock, have been complied with;

That at a meeting of the directors of said company, on the 27th day of March, 1865, an assessment of one dollar on each share of stock was duly and legally laid, and due notice thereof was given to the defendant, in accordance with the laws of this State and the by-laws of said company, and that said defendant was not one of said directors;

That before and at the time of laying said assessment, and up to the time of sale hereinafter mentioned, said defendant was the owner of three hundred shares of said stock, which had been sold, assigned and transferred to him by stockholders of said company, after the payment on each of said shares of five dollars and fifty cents, and held two certificates of said stock in the form set forth in the first count of the plaintiffs' declaration, which had been issued and delivered to him by said corporation after said assignment, one of said certificates being for two hundred shares, and one for one hundred shares of said stock; and that he, thereafter, and up to the time of said sale, continued to hold the same;

That after due and legal notice of the laying of said assessment, the defendant refused to pay the amount assessed upon his stock, and that thereupon the said stock of said defendant was duly forfeited and sold in the manner set forth in the plaintiffs' declaration, and that said sale was in all respects legal and valid;

That the amount realized from said sale was one hundred and fifty dollars, and that the defendant has never paid the remainder, nor any part of said assessment;

That if said plaintiffs are entitled to recover against said defendant, judgment shall be entered against him for the balance remaining unpaid of said assessment, after deducting said one hundred and fifty dollars.

April 7th, 1866.

MAYNARD, MEDDAUGH & SWIFT,
*Attorneys for Defendant."*

D. B. & H. M. DUFFIELD,
*Attorneys for Plaintiffs.*

It was also further stipulated, that a copy of the by-laws and articles of association of said corporation should be used on the trial, in all respects as if they had been duly and properly proven.

The Court found for the defendant.

*D. B. & H. M. Duffield*, for plaintiffs.

1. If the defendant was an original subscriber, there could be no question as to his liability.—3 *Mich.* 91; 5 *Id.* 288.

If the original subscriber is liable, a purchaser from him or from his assignee must be equally liable, for he stands in his place. He buys the original subscriber's stock, entitled to all its benefits, and subject to all its liabilities.

There is no distinction made by statute between original subscribers, and stockholders by purchase, and there certainly can be none at common law.—12 *Conn.* 532; 6 *Harr. & Johns.* 128; 6 *Hill*, 628.

2. If the company has this right of action against the original subscribers and not against their assignees, what becomes of it? Does it survive, and if so, against whom?

The original subscriber is clearly not liable for calls made after a transfer of his stock.—7 *Term R.* 36; 12 *Conn.* 582; 10 *Allen*, 245. This liability must exist somewhere, or the corporation is exposed to dissolution in its first efforts at active operations. The original subscriber being discharged, it must survive against his assignee.

3. But we think the whole case is disposed of by the scrip

expressing his interest in the corporation, and the terms and conditions by which he holds it. The certificate of stock which the defendant received from the plaintiffs expressly states that the defendant receives the stock, "subject to the payment of such additional assessments as the directors may impose, until the full amount of twenty-five dollars per share shall have been paid, agreeably to the charter and by-laws."

This, of itself, with a delivery and acceptance of the scrip, seems to us to be sufficient to raise an assumpsit on the part of the defendant to pay such assessments, and to justify this action.

*Maynard, Meddaugh & Swift*, for defendant.

1. The only question to be decided is, whether defendant is liable to be sued for such balance.

Personal liability to pay for assessments upon stock, in all cases where the matter has come up for decision, has been made to depend either upon an express promise to pay them, or upon the fact that the charter, either in express terms, or by necessary implication, makes every subscriber liable to pay assessments; and as every subscription is held equivalent to an assent to take stock, upon the terms prescribed by the charter, the charter itself becomes as much a part of the agreement as if actually incorporated into the paper signed by the subscriber.—17 *Barb.* 567; 16 *N. Y.* 457; 12 *Conn.* 500; 2 *Met. (Ky.)* 314; 3 *Ala.* 660; 3 *Mich.* 91; 5 *Id.* 288.

So, in some cases, the charters have provided that assignees should be liable to suit.—7 *Term, R.* 36.

So, also, there are cases against assignees, based upon statutes, making stockholders liable, to the amount of stock, to creditors of incorporations. — 2 *Sandf. Ch.* 258; 2 *Barb.* 294.

Without some express agreement, or some provision in the charter requiring it, it is difficult to understand upon what legal principle an original subscriber, much more his assignee, can be held liable personally for assessments.

By the statute under which the plaintiffs were organized,

they not only had a right of action against a subscriber, but a lien upon his stock, with the right of sale.

In the *5th of Michigan* this lien is treated like a mortgage. If so, why should a sale of the stock, any more than a sale of mortgaged premises, create any personal liability upon the part of the assignee? And why should not the original subscriber still continue liable upon his agreement?—11 *N. Y.* 113; 29 *Penn.* 146; 31 *Id.* 489; 7 *Bosw.* 115.

And why should the assignee be considered liable to anything except a sale of his stock, in case of non-payment of assessments?—26 *N. Y.* 134; 31 *Me.* 573; 1 *Binn.* 70; 34 *Penn.* 288.

CAMPBELL J.

The only question presented for decision in this case is, whether a stockholder, who was not one of the original subscribers to a mining corporation, organized under the general mining law, is liable for the balance due upon assessments, after applying the proceeds of stock sold for default.

It was held by this Court, in *Carson v. The Arctic Mining Company*, 5 *Mich.* 288, that an original subscriber was liable for such deficiency, after his stock had failed to bring enough to clear off the assessment for which it was sold. There was nothing in his subscription beyond the single act of taking so much stock in the company when it was formed.

Subscribing, then, meant nothing more than becoming an original stockholder; and the duty to pay, which was held by the Court to rest upon him, sprang solely from that relationship.

There is no principle of law which can establish any difference among stockholders, in the duties which are implied from that relation. The very essence of a corporation consists in its corporate succession, which, in stock companies, is kept up by the substitution of one owner for another in the proprietorship of shares. If the original stockholders stand under different relations to the company from their assigns, the

corporation itself loses some of its attributes by the substitution, or else becomes introduced into more complicated relations. It seems to be an unavoidable conclusion, that every liability which attaches to a stockholder, as such, is inseparable from the ownership of the stock.

There is nothing in any of our statutes from which any different rule can be deduced. The stockholders, whose rights are recognized in fixing upon the sale of stock for assessments, are always the owners of the shares involved. In the section of the general mining law, providing for such sales, there is no reference whatever made to original subscribers who have sold their stock, although, if they were liable to respond, they would be especially interested in a matter where a want of notice might involve them in serious loss.—See *Comp. L.* § 1809.

The case of *Carson v. The Arctic Mining Company*, having been decided with reference to the law under which the plaintiff was incorporated, and having established the responsibility of original stockholders, must, upon the grounds stated, govern this controversy also, as the questions, as we view them, are identical in both suits.

The judgment, upon the agreed state of facts, must be reversed, and a new judgment entered in this Court for one hundred and fifty dollars damages, with costs of both courts.

The other Justices concurred.