SIGUA IRON COMPANY, Respondent, *v.* HAROLD P. BROWN, Appellant.

1. TRIAL — REQUESTS FOR DIRECTION OF A VERDICT. The request by both parties for the direction of a verdict amounts to a submission of the whole case to the trial judge, and his decision in plaintiff's favor upon the facts has the same effect as if the jury had found a verdict in the plaintiff's favor after the case was submitted to it.

2. FOREIGN CORPORATION — ACTION FOR CALLS — APPOINTMENT OF RECEIVER. An action for unpaid calls may be maintained in this state by a foreign corporation against a transferee of stock personally served with process in this state and not a resident of, nor subject to, the jurisdiction of another state, after the appointment of a receiver of its assets by the Federal courts in that state, where the receivership is merely a temporary one *pendente lite.*

3. APPOINTMENT OF ANCILLARY RECEIVER — CONTINUANCE OF ACTION BY. An action by a foreign corporation may be continued in its name after the appointment of an ancillary receiver in this state, under sections 755 and 756 of the Code of Civil Procedure, providing that an action does not abate by any event if the cause of action survives or continues, and that in case of a transfer of interest or devolution of liability, the action may be continued by or against the original party, unless the court directs the person to whom the interest is transferred, or upon whom the liability is devolved, to be substituted in the action or joined with the original party, as the case requires.

4. EVIDENCE — BOOKS OF FOREIGN CORPORATION. Original books of a foreign corporation which have been in the custody of its proper officer are admissible to prove its corporate acts or transactions in an action against a transferee of stock for unpaid calls, without first proving the correctness of each entry by the person making it, and are presumptive evidence for that purpose under section 929 of the Code of Civil Procedure, providing that where a party wishes to prove an act or transaction of a foreign corporation, the book or books of the corporation may be used for that purpose as presumptive evidence, whether any or all of the parties are or are not members of the corporation, and under the following section making provision for the use of a copy of such books.

5. CORPORATIONS — TRANSFEREE OF STOCK — IMPLIED PROMISE TO PAY CALLS. An implied promise on the part of a transferee of partly paid stock to pay future calls thereon is created by the issuance of a certificate of stock to him, his receipt for it, the acceptance of the certificate from which it expressly appeared that the stock he purchased was subject to future calls to the amount unpaid thereon, plainly establishing that he became and intended to become a stockholder in the corporation and to accept all the benefits and incur all the liabilities attending such relation, especially where, after apparently becoming such stockholder, several calls were made upon him in response to which he sent his check for the amount thereof, in each case expressly stating that the money was to pay calls upon the stock in question standing in his name.

6. APPEAL — SUFFICIENCY OF EVIDENCE — FAILURE TO RENEW MOTION — WAIVER. The question of the sufficiency of the evidence to sustain a recovery will not be considered on appeal where the appellant, after the denial of his motion to dismiss upon that and other grounds, made at the close of plaintiff's evidence, proceeded with the trial and introduced evidence in his own behalf, at the close of which he moved for dismissal

only upon other grounds, thereby waiving his exception to the refusal of his former motion upon that ground, although he asked for the direction of a verdict which was denied and a verdict directed for plaintiff, but took no exceptions to those rulings.

*Sigua Iron Co.* v. *Brown,* 58 App. Div. 436, affirmed.

(Argued May 26, 1902; decided June 10, 1902.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 25, 1901, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William F. Goldbeck* for appellant. The plaintiff corporation had no right or legal capacity to bring this action, its title and right of action having passed to the Federal receiver before this action was commenced. (*A. B. Co.* v. *Sylvester,* 68 Hun, 401; *Rankine* v. *Elliott,* 16 N. Y. 377; *Davis* v. *L. C. Co.,* 128 Ind. 222; Beach on Receivers, § 666; *Mabon* v. *Ongley,* 156 N. Y. 196; *Howarth* v. *Angle,* 162 N. Y. 179.) There was no transfer of interest to the ancillary receiver, and section 756 of the Code of Civil Procedure does not apply. (*P. W. Co.* v. *Badger,* 67 N. Y. 299; *Osgood* v. *McGuire,* 61 N. Y. 524; *Douglass* v. *P. Ins. Co.,* 138 N. Y. 209; *Carr* v. *Corcoran,* 44 App. Div. 97; *Mabon* v. *Ongley,* 156 N. Y. 196.) Plaintiff's books, without proper authentication, were not competent evidence against the defendant. (*Derham* v. *Lee,* 60 How. Pr. 334; *State Bank* v. *Brown,* 165 N. Y. 216; *Rudd* v. *Robinson,* 126 N. Y. 113; *H. T. Co.* v. *McKean,* 10 Johns. 154; *Carey* v. *Williams,* 79 Fed. Rep. 906; *S. I. Co.* v. *Greene,* 104 Fed. Rep. 854.) Defendant not being a subscriber to the stock, but only a transferee, is not liable for unpaid calls thereon, except by express agreement. No express agreement was proved and no evidence was given of an implied obligation. (*Seymour* v. *Sturgis,* 26 N. Y. 134; *Palmer* v. *R. M. Co.,* 34 Penn. St. 288; *F. E. & F. M. P.*

*R. Co.* v. *Payne,* 17 Barb. 573 ; *Andover* v. *Gould,* 6 Mass. 40.) The proper construction to be given to section 929 of the Code is, that it was not intended to favor foreign corporations, but to facilitate citizens of this state. (*White* v. *Wager,* 25 N. Y. 328 ; *People* v. *Palmer,* 109 N. Y. 110 ; *Fitzgerald* v. *Quann,* 109 N. Y. 441.) The West Virginia statute is not in evidence. (*Cook* v. *Barr,* 44 N. Y. 156 ; *Mott* v. *C. I. Co.,* 73 N. Y. 543 ; *Tisdale* v. *D. & H. C. Co.,* 116 N. Y. 416 ; *Eisenlord* v. *Clum,* 126 N. Y. 552.) There is no proof in this case of either an express or an implied agreement by defendant to pay calls. The Federal decisions are not controlling. (*Christensen* v. *Eno,* 106 N. Y. 97 ; *R. & K. F. L. Co.* v. *Raymond,* 158 N. Y. 576.

*R. Burnham Moffat* for respondent. The plaintiff corporation never parted with its title to the cause of action sued upon. (*Decker* v. *Gardner,* 124 N. Y. 334 ; *Keeney* v. *H. Ins. Co.,* 71 N. Y. 396 ; *A. B. Co.* v. *Sylvester,* 68 Hun, 401 ; *Rankine* v. *Elliot,* 16 N. Y. 377 ; *Davis* v. *L. C. Co.,* 128 Ind. 222 ; *Coope* v. *Bowles,* 28 How. Pr. 10 ; *Griffin* v. *L. I. R. R. Co.,* 102 N. Y. 449 ; *Howarth* v. *Angle,* 162 N. Y. 179.) Plaintiff's books were properly received in evidence. (Code Civ. Pro. § 929.) Defendant assumed a contractual liability to pay the unpaid calls upon the sixty shares. (*Railroad Co.* v. *Mason,* 16 N. Y. 451 ; *Plank Road Co.* v. *Barton,* 16 N. Y. 461 ; *Burr* v. *Wilcox,* 22 N. Y. 551 ; *Glenn* v. *Garth,* 133 N. Y. 31 ; *Seymour* v. *Sturgess,* 26 N. Y. 134 ; *Stoddard* v. *Lum,* 159 N. Y. 273 ; *Sanger* v. *Upton,* 91 U. S. 56 ; *Upton* v. *Tribilcock,* 91 U. S. 45 ; *Webster* v. *Upton,* 91 U. S. 65 ; *Pullman* v. *Upton,* 96 U. S. 330 ; *Howarth* v. *Angle,* 162 N. Y. 187 ; *Richmond* v. *Irons,* 121 U. S. 27 ; *R. L. Co.* v. *Raymond,* 158 N. Y. 583.)

MARTIN, J. This action was brought by a foreign corporation to recover unpaid calls upon sixty shares of its assessable capital stock transferred to the defendant and represented by its certificate No. 106. The original complaint was twice

amended, but the issues tried arose upon the last amended complaint and answer. At the time of the transfer of the stock in question seventy per cent of its par value had been paid, leaving thirty per cent subject to future calls. A call for five per cent appears by the record to have been issued by the corporation and paid by the defendant before the actual transfer upon the books of the company and the certificate to the defendant were made. Subsequently the defendant paid three calls, one for five per cent due November 1, 1890 ; one for two and one-half per cent due January 15, 1891, and another for two and one-half per cent due February 1, 1891. The calls thus paid amounted to six hundred dollars, leaving twelve hundred dollars unpaid, for which calls were afterwards duly made by the corporation. The defendant was not an original subscriber to the stock of the plaintiff, but the shares represented by certificate No. 106 were transferred to him by one Smith as trustee, who was obviously the original subscriber. The unpaid calls upon the defendant's stock and the interest thereon from the time they became due amounted to $1,878.10.

On the trial and at the close of the plaintiff's evidence, the defendant moved to dismiss the complaint upon the grounds : 1. That it did not state, and the plaintiff had not proved, facts sufficient to constitute a cause of action; 2. That the action was commenced at a time when the corporation had no right to bring such an action, being restrained by the Pennsylvania receivership; 3. That the receiver had no right to commence the action, not having been appointed receiver in this state; and, 4. "That as the amended complaint was interposed by an utter stranger to the action, the action has been practically abandoned by the corporation plaintiff, and is now being conducted by a stranger to the action." This motion was denied and an exception was taken. The defendant's counsel then offered in evidence the original and supplemental complaints in this action, the order substituting Logan M. Bullitt as plaintiff, and the order vacating that order. After the introduction of this evidence, and after certain admissions

by the plaintiff were made, the defendant rested and the evidence was closed. The defendant thereupon moved to dismiss the complaint upon the ground that the order appointing the ancillary receiver made him receiver of the assets of the plaintiff in this state, confining him to the collection of those assets, and upon the ground that the defendant, at the time of the commencement of this action and ever since, has been a non-resident of the state. This motion was also denied and the defendant excepted. The record then states: "Plaintiff and defendant move for the direction of a verdict. The court directs a verdict for the plaintiff for $1,878.10. Defendant moves for a new trial on the minutes. The court entertains the motion and directs that entry of judgment be suspended until the determination of that motion." The motion for a new trial was subsequently denied and judgment entered upon the verdict. From the order denying the motion for a new trial and from the judgment an appeal was taken to the Appellate Division, where both were affirmed, and the defendant has appealed to this court. The court directed a verdict in favor of the plaintiff for the amount of the calls and interest thereon, to which the defendant took no exception. Nor did he request the submission of any question to the jury. The request by both parties for the direction of a verdict amounted to a submission of the whole case to the trial judge, and his decision upon the facts has the same effect as if the jury had found a verdict in the plaintiff's favor after the case was submitted to it. (*Adams* v. *Roscoe Lumber Co.*, 159 N. Y. 176; *Smith* v. *Weston*, 159 N. Y. 194; *Thompson* v. *Simpson*, 128 N. Y. 270, 283; *Koehler* v. *Adler*, 78 N. Y. 287; *Sweetland* v. *Buell*, 164 N. Y. 541, 548.)

The first ground upon which the defendant relies to sustain this appeal is that the plaintiff had no right or legal capacity to bring this action, its title and right of action having passed to a Federal receiver before it was commenced. The defendant introduced in evidence a decree of the Circuit Court of the United States for the eastern district of Pennsylvania made in October, 1893, appointing Logan M. Bullitt a receiver

of the plaintiff. This decree was granted with the consent of the plaintiff and upon the application of certain persons named as plaintiffs in that action. It was based upon a bill of complaint and affidavits, and was evidently an appointment of a temporary receiver *pendente lite*. Subsequently, and after the commencement of this action, the same person was appointed ancillary receiver in this state. It is obvious from an examination of the decree of the Federal court that the receivership consented to by the parties was a temporary one and not a permanent receivership after trial and dissolution of the corporation. If he was a permanent receiver it was not established by the proof. The appointment of a temporary receiver *pendente lite* does not dissolve a corporation, nor restrain the exercise of its corporate powers. His functions are limited to the care and preservation of the property committed to his charge. He does not represent the corporation in its individual or personal character, nor supersede it in the exercise of its corporate powers, except as to the particular property confided to him. This receiver was appointed by the United States Circuit Court for the eastern district of Pennsylvania, and, consequently, his powers were limited to the district in which the decree was made, unless some additional power was subsequently conferred. The corporation still had the right to exercise its corporate powers, except as to the matters and claims specially confided to the receiver by that court. The title to the property was not changed by his appointment. The receiver acquired no title, but only the right of possession as the officer of the court. The title remained in the corporation in which it was vested when the appointment was made. (*Keeney* v. *Home Ins. Co.*, 71 N. Y. 396, 401; *Herring* v. *N. Y., L. E. & W. R. R. Co.*, 105 N. Y. 340, 372; *Decker* v. *Gardner*, 124 N. Y. 334, 338; *Stokes* v. *Hoffman House*, 167 N. Y. 554, 559; *Kincaid* v. *Dwinelle*, 59 N. Y. 548; *United Glass Co.* v. *Vary*, 152 N. Y. 121, 125; *Pringle* v. *Woolworth*, 90 N. Y. 502, 503.) Therefore, it follows that the right to recover the calls unpaid by the defendant remained in the corporation and it had a

right of action, to enforce them against the defendant who was personally served with process in this state and who was not a resident of the state of Pennsylvania, nor, so far as the proof discloses, subject to its jurisdiction.

But it is contended that upon the appointment of the ancillary receiver in this State, which was after the commencement of this action, there was no authority for its continuance in the name of the plaintiff. Sections 755 and 756 of the Code of Civil Procedure provide: "An action does not abate by any event, if the cause of action survives or continues. * * * In case of a transfer of interest, or devolution of liability, the action may be continued, by or against the original party; unless the court directs the person, to whom the interest is transferred, or upon whom the liability is devolved, to be substituted in the action, or joined with the original party, as the case requires." Obviously these provisions of the Code justified the continuation of the action, even after the appointment of an ancillary receiver, and authorized him to continue it in the name of the plaintiff, and as he verified the amended complaint as receiver, he manifestly accepted the action as it then stood and became responsible for its prosecution. *Phœnix Warehousing Co.* v. *Badger* (67 N. Y. 294, 299) is decisive of this question. There an action was commenced in the name of a corporation before the appointment of a temporary receiver, and this court held that it could be continued in the name of the original party for the benefit of the receiver under the provisions of the Code.

The next error assigned by the defendant is that the court erred in admitting in evidence the plaintiff's books without proper authentication, and that they were not evidence against him. There is no claim that the books were not the original books of the corporation, nor that they were not proved to be such and to have been in the custody of its proper officer. But the claim is that each entry should have been proved to be correct by the person actually making it, and unless that was done they were inadmissible. Doubtless there are cases where it would be necessary to show the correctness of the entries

in the books of a corporation before they could be received in evidence. But those cases are where they have been offered or admitted to prove an account of a corporation for the purpose of establishing a debt or liability against third persons in an action brought by or in behalf of the corporation. That they are not admissible for such a purpose is well established. But, as was said by Judge Earl in *Rudd* v. *Robinson* (126 N. Y. 113, 117): " The books of corporations for many purposes are evidence, not only as between the corporation and its members and between members, but also as between the corporation or its members and strangers. They are received in evidence generally to prove corporate acts of a corporation, such as its incorporation, its list of stockholders, its by-laws, the formal proceedings of its board of directors and its financial condition when its solvency comes in question." ( *Wood* v. *Jefferson County Bk.*, 9 Cow. 194; *Tilden* v. *Young*, 39 Mich. 58; *Rockville & Washington Turnpike-Road* v. *Van Ness*, 2 Cranch C. C. 449; *Turnbull* v. *Payson*, 95 U. S. 418; *Hamilton and Deansville Plank Road Co.* v. *Rice*, 7 Barb. 157, 162.)

Moreover, section 929 of the Code of Civil Procedure provides: " Where a party wishes to prove an act or transaction of a foreign corporation, the book or books of the corporation may be used for that purpose, as presumptive evidence, whether any or all of the parties are or are not members of the corporation." The next section provides for securing a copy of such book or books, states how it shall be verified, that it may be used with like effect as the original book if a specified notice shall be given, and then provides that that and the following section do not apply where the foreign corporation is a party. When these sections are read together it becomes evident, we think, that the books of such a corporation may be used to prove its corporate acts or transactions and that they are presumptive evidence for that purpose even where the corporation is a party.

The only remaining objection to the recovery in this case is that the defendant, not being an original subscriber for the

stock standing in his name on the books of the corporation, but only a transferee, is not liable for unpaid calls thereon except upon proof of an express agreement to pay; that no express agreement was proved, and that the evidence was insufficient to justify the implication of such an obligation. The record discloses that the books of the plaintiff were introduced in evidence and proved by their proper custodian to be the regular books of the corporation. They consisted of the minute book of the meetings of the board of directors made by the secretary, the stock transfer book, the stock ledger, and the installment stock certificate book. That these books were in the custody of the secretary and treasurer of the plaintiff was also established. It appeared from the books thus introduced that upon July 9, 1890, the corporation issued to the defendant certificate No. 106, that it was for sixty shares of stock, and that he was a registered stockholder on the books of the corporation. Upon the stub of the stock certificate issued to him was the following entry: " 70% Paid. No. 106. 60 Shares. Issued to Harold P. Brown, New York, July 9th, 1890. Received the above described certificate July 18th, 1890. Harold P. Brown." The defendant's counsel admitted that the signature at the foot of this stub was that of the defendant. Then followed a stipulation by the parties whereby it was conceded that installment stock certificate No. 106 mentioned in the plaintiff's amended complaint was in words and figures as follows:

" Organized under the Laws of West Virginia.

" Sigua Iron Co.      Installment Certificate.

" No. 106.                                     60 Shares.

" This certifies that Harold P. Brown is entitled to sixty shares of the capital stock of the Sigua Iron Co., of the par value of one hundred dollars, upon which sixty-five per cent has been paid and subject to calls and assessments to the extent of thirty-five per cent. A full-paid certificate of stock will be issued after all the installments have been paid and upon the surrender of this certificate. Transferable only on the books of the said company by the stockholder or his duly

32

authorized attorney upon the surrender of this certificate." This certificate was dated the ninth day of July, 1890, and was countersigned and registered the fourteenth day of the same month by the Fidelity Insurance, Trust and Safe Deposit Company of Philadelphia, Pa., registrar. It was proved that this certificate had not been transferred. Then followed the resolutions of the board of directors making calls upon the stock for the whole amount unpaid thereon. Several of the defendant's letters were introduced in evidence by the plaintiff, which clearly show that the three calls referred to were paid by him. The plaintiff then proved that the defendant was duly notified of the calls which remained unpaid. Thus, the question presented is whether the proof was sufficient to justify the court in determining as a question of fact that the defendant was liable for the unpaid calls upon the stock held by him, either upon an express or implied contract to that effect. Before proceeding further in the discussion of this question it is deemed expedient to examine the authorities bearing upon it.

In *Hoagland* v. *Bell* (36 Barb. 57) it was held that where the name of an individual appears on the stock book of a corporation as a stockholder, this is presumptive evidence that he is so, and in an action against him as a stockholder, the burden of proving that he is not is thrown upon him.

In *Webster* v. *Upton* (91 U. S. 65, 68) it was held that the transferee of stock is liable for calls made after he has been accepted by the company as a stockholder and his name registered on the stock books as a corporator, and, being thus liable, there is an implied promise that he will pay calls made upon such stock while he continues its owner. It was there said : " An implied promise is proved by circumstantial evidence; by proof of circumstances that show the party intended to assume an obligation. A party may assume an obligation by putting himself into a position which requires the performance of duties. What we have said thus far is applicable to the case of an original subscriber to the stock, and equally to a transferee of the stock who has become such by transfer on

the books of the company.   *   *   *   But, if the law implies a promise by the original holders or subscribers to pay the full par value when it may be called, it follows that an assignee of the stock, when he has come into privity with the company by having stock transferred to him on the company's books, is equally liable.   The same reasons exist for implying a promise by him as exist for raising up a promise by his assignor.   And such is the law as laid down by the text writers generally and by many decisions of the courts." (*Bend* v. *Susquehanna Bridge Co.*, 6 Har. & J. 128 ; *Hall* v. *United States Ins. Co.*, 5 Gill, 484 ; *Hartford & New Haven R. R. Co.* v. *Boorman*, 12 Conn. 530 ; *Huddersfield Canal Co.* v. *Buckley*, 7 Term R. 36.)   After referring to *Seymour* v. *Sturgess* (26 N. Y. 134), as to which it is said the circumstances were very peculiar, and to three other cases in other jurisdictions, the court adds : " In neither of these cases was it brought to the attention of the court that the stock was a trust fund held for the protection of creditors in the first instance, a fund no part of which either the company or its stockholders was at liberty to withhold."   The court then cites Angell and Ames on Corporations, to the effect that when an original stockholder, who is bound to pay the installments on his subscription as called in by the company, transfers his stock to another person, such person is substituted not only to the rights, but also to the obligations, of the original subscriber, and is bound to pay the installments called for after the transfer to him ; that that liability is shifted from the outgoing to the incoming shareholder, and that a privity is created between the two by the assignment of the one and the acceptance of the other, and also between them and the corporation.   The court then referred to Redfield on Railways, which is to the effect that the cases agree that whenever the name of the vendee of shares is transferred to the register of shareholders, the vendor is exonerated, and the vendee becomes liable for calls.

In Cook on Stock and Stockholders (§ 256) it is said : " When a transfer of stock is made, and the transfer is duly

recorded in the corporate stock book, the transferee thereupon becomes liable for any balance of the subscription price remaining unpaid at the time of the transfer. The transfer releases the transferrer, and charges the transferee," citing *Webster* v. *Upton* (91 U. S. 65); *Pullman* v. *Upton* (96 U. S. 328); *Upton* v. *Hansbrough* (3 Biss. 417); *Hall* v. *United States Ins. Co.* (5 Gill, 484); *Bend* v. *Susquehanna Bridge Co.* (6 Har. & J. 128); *Merrimac Mining Co.* v. *Bagley* (14 Mich. 501); *Brigham* v. *Mead* (10 Allen, 245); *Hartford, & N. H. R. R. Co.* v. *Boorman* (12 Conn. 530); *Moore* v. *Jones* (3 Woods, 54); *Merrimac Mining Co.* v. *Levy* (54 Penn. St. 227); *Huddersfield Canal Co.* v. *Buckley* (7 Term R. 36); *Gray's Case* (L. R. [1 Ch. Div.] 664). The American and English Encyclopædia of Law (p. 815); Beach on Private Corporations (§ 66) and Morawetz on Private Corporations (§ 159) are all to the same effect.

In *Rosevelt* v. *Brown* (11 N. Y. 148) it was held that a person to whom stock is transferred on the books of a company and who upon such books appears to be the legal owner, is liable as a stockholder, though it was transferred to and held by him as security for a debt. The doctrine of that case was affirmed in *Cutting* v. *Damerel* (88 N. Y. 410, 416). (See also *Matter of the Empire City Bank*, 18 N. Y. 199, 223.)

In *Johnson* v. *Underhill* (52 N. Y. 203, 211), where the question as to the effect of a transfer of the stock of a corporation was under consideration, it was held that, until the transfer upon the books is in fact made, the vendor is the normal owner and is to be treated as the trustee of the stock for his vendee, and that the vendee takes the shares subject to all the burdens and liabilities attached to or growing out of them, and the law implies an obligation or promise upon his part that those burdens and liabilities will not come upon the vendor. In discussing that question Judge Folger said: "Text books of acknowledged authority say: 'If a person accept anything which he knows to be subject to a charge or duty, it is rational to conclude that he meant to take the charge or duty upon himself, and the law may very well

imply a promise to perform what he has so taken upon himself.'" (Broom's Legal Maxims, 677, 680, citing Abbott on Shipping, 286.) In the further discussion of the question he added : " The vendee does, in all cases of sale and transfer to him, take the shares with a right to all the benefits attached to or growing out of them, and this from the mere fact of the sale and transfer. And so from the same fact he takes them subject to all the burdens and liabilities attached to or growing out of them. And so the law will imply a duty, obligation or promise from him to the vendor, that those burdens and liabilities shall not come upon the latter." He then quotes from *Grissell* v. *Bristowe* (L. R. [3 C. P.] 112) as follows : " The very essence of a contract of sale and purchase in the case of shares is that one party shall divest himself of and the other acquire, in the name of himself, the ownership of the shares, and that the seller shall relinquish and be relieved from and the purchaser assume all future benefits and liabilities in respect of the shares.", He then refers to the case of *Currie* v. *White* (45 N. Y. 822) where it was held that the vendor of shares was a trustee for the vendee and that dividends received were held by him as such, and then adds : " And, as a counter proposition, the same case holds that the vendor was not bound to advance his own money to save for his vendee the new shares, which were to be awarded only upon a further payment by the holders of the old. This is upon the principle that the duty to bear burdens is correlative to the right to take benefits. And it is from the existence of that duty that the law will imply the undertaking, upon the part of the vendee, to indemnify the vendor against future liabilities."

In *Rochester & K. F. Land Co.* v. *Raymond* (158 N. Y. 576, 583) it was held that in the absence of special provisions to the contrary, either in the statute under which a corporation was organized or in its by-laws, an original subscriber to its stock can transfer his stock to another, and, if the transfer is made in good faith, his liability ceases and the transferee will be substituted in his place, with the same rights and

liabilities as the original holder. It was there said : "Indeed, one of the chief attributes of corporate stock is the right of transfer, whereby the rights and liabilities of the stockholder are transferred to the purchaser. We find no principle or authority which limits the power of substitution of the purchaser. to the rights and liabilities of the owner to a time after the stock has been fully paid for."

Again in *Stoddard* v. *Lum* (159 N. Y. 265, 273) this court said : "Subscribers to the stock of a corporation incur a debt which may be enforced by any common-law or equitable remedy. (*Mann* v. *Cooke*, 20 Conn. 178.) The capital stock of a corporation is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. The creditors have a lien upon it in equity. Unpaid stock is as much a part of this pledge and as much a part of the assets of the company as the cash which has been paid in upon it." It was there held that the receiver of a foreign corporation could recover the amount of unpaid subscriptions to the capital stock.

In discussing the liability of a stockholder in *Howarth* v. *Angle* (162 N. Y. 179, 187) it was said : "While the liability is, for convenience, frequently called statutory, because the statute, which. is the constitution of the bank, affixed the obligation to the ownership of stock, it is in fact contractual and springs from an implied promise. There is no substantial difference between the liability for an unpaid balance on a stock subscription, which is an express contract to take stock and pay for it (*Stoddard* v. *Lum*, 159 N. Y. 265), and the liability for the unpaid deficiency of assets assumed by the act of becoming a member of the corporation through the purchase of stock, from which a contract is implied to perform the statutory conditions upon which stock may be owned." In that case it was said that where the liability and remedy are created by the same statute, the remedy provided is exclusive of all others, but that a general liability created by statute without a remedy may be enforced by common-law action.

The defendant relies upon the case of *Seymour* v. *Sturgess* (26 N. Y. 134) as an authority to justify his contention that no liability arose or is to be implied from the fact that he became a stockholder of the corporation either by original subscription or by transfer, where the certificate stated that the stock was subject to further payments by order of the directors. As has often been remarked in reference to that case, it was peculiar and arose under peculiar circumstances. It is quite obvious, we think, that in view of the fact that in that case the remedy provided was by a forfeiture of the stock, which was exclusive, which is not the case here, and in view of the authorities cited, that case cannot now be regarded as an authority to the effect that either an original subscriber or a transferee is not liable upon an implied promise to pay any future calls which may be made upon the stock where it is transferred to him upon the books of the company, so that the relation of stockholder actually exists. In *Glenn* v. *Garth* (133 N. Y. 18, 42), Judge Finch, after referring to that case, in discussing the question whether a promise was to be implied, said: " Where the shareholder consciously accepts that relation, he ought to bear its burdens as well as enjoy its benefits, and it is easy to imply a promise to perform that duty. But where he does not accept the relation, * * * the facts do not admit of it, for the law does not raise a fiction to accomplish a wrong."

When the question of the implied promise or liability of the defendant to pay the future calls upon the stock transferred to him on the books of the company is considered in the light of the principles established by the foregoing authorities, it becomes quite obvious that the court was justified in finding an implied promise upon his part to pay all future calls thereon. That he in fact became and intended to become a stockholder in the plaintiff corporation, and to accept all the benefits and incur all the liabilities that attended such relation, is plainly established by proof of the issue of the certificate of stock to him, his receipt for it, and the acceptance of the certificate, from which it expressly appeared

that the stock he purchased was subject to future calls to the amount unpaid thereon. A privity between the corporation and the defendant and the relation of corporation and stockholder was created by the assignment of the stock to the defendant, his acceptance of it, its transfer upon the books of the corporation and the receipt of the certificate of stock by him. Thus, upon the books of the corporation he was the legal owner of the stock, and became such knowing that he was subject to be charged for unpaid calls. To these facts may be added the fact that after he became such shareholder there, different calls were made upon him, and in response he wrote the plaintiff, not only sending his check to pay for the amount of the calls, but in each case expressly stating that the money sent was to pay calls upon the stock in question standing in his name. Thus, it is evident that he consciously became a stockholder and plainly recognized his liability as such to pay the future calls thereon. (See *Union Hotel Co.* v. *Hersee,* 79 N. Y. 454, 460, where it was held that the payment of calls upon corporate stock was a ratification of a subscription for it and evidence of its validity.) The defendant's recognition of his liability, and his ratification of the acts of the corporation in making calls upon his stock by paying them, show a clear intent upon his part to become a stockholder of the plaintiff, and to assume the obligations and liabilities incident thereto, as well as to receive the benefits expected therefrom.

The statutes under which the plaintiff company was organized provided : " The person in whose name shares of stock stand on the books of the corporation shall be deemed the owner thereof, so far as the corporation is concerned. At least ten per cent of the par value of each share shall be paid at the time of the subscription and the residue as required by the board of directors or the commissioners having control of the subscription. If any stockholder fail to pay any installment upon his shares when required by the board, the corporation may recover from him the principal sum due, with interest thereon at the rate of ten per cent per annum, by motion on

ten days' notice or by action before any justice or court having
jurisdiction." (Code W. Va., pp. 504, 505, §§ 19, 25, 28.)
So far as the record discloses, this statute was not read in evi-
dence by the plaintiff. The defendant, however, introduced
the original complaint which set out the foregoing statute.
He now contends that his introduction of the complaint in
evidence did not prove the statute. That it is correctly set
out in the complaint is shown by reference to the Code of
West Virginia. This court might have allowed it to be read
upon the hearing of this appeal to sustain the judgment if
such an application by the plaintiff had been made. Yet, as
no such application was made, it cannot be considered as in
evidence, unless it was proved by the introduction of the com-
plaint. That question we deem it unnecessary to decide at
this time, as we are of the opinion that the court was justified
by the other proof in the case in finding that there was an
implied promise on the part of the defendant to pay the calls
upon the stock transferred to him, and that he was liable
therefor independently of the statute under which the plain-
tiff was organized.

It is also to be observed that while the defendant at the
close of the plaintiff's evidence moved to dismiss the com-
plaint upon grounds that would raise all the questions dis-
cussed, yet he then proceeded with the trial of the case on his
part and introduced evidence in his own behalf. After it
was received he rested and the evidence was closed. He then
moved to dismiss the complaint only upon the grounds that
the order appointing the ancillary receiver made him receiver
of the assets of the Sigua Iron Company in this state, confin-
ing him to the collection of those assets, and that the defend-
ant at the time of the commencement of this action was and
ever since has been a non-resident of the state of New York.
That motion was denied, and the defendant excepted. Thus
the question is presented whether the exceptions taken to the
refusal of the court to nonsuit the plaintiff at the close of its
evidence are available upon this appeal to present any other
questions than those involved in the ruling of the court

refusing to dismiss the complaint upon the grounds stated at the close of the case. This court has frequently held that an exception to the denial of a motion for the dismissal of a complaint at the close of the plaintiff's case is not available in the Court of Appeals to raise the question of law that there is no evidence to support the verdict, where the defendant, after the denial of the motion, proceeded with his case and went to the jury without having renewed the motion to dismiss at the close of the whole evidence. This is based upon the ground that where, after a motion to dismiss at the close of the plaintiff's evidence, a defendant proceeds with his case and puts in evidence on his part, he thereby waives the exception to the refusal to nonsuit when the plaintiff rested. (*Hopkins* v. *Clark*, 158 N. Y. 299; *Littlejohn* v. *Shaw*, 159 N. Y. 188, 191; *Wangner* v. *Grimm*, 169 N. Y. 421, 427.) It is true that the defendant in this case moved for the direction of a verdict, and that the court denied that motion and directed a verdict for the plaintiff, but to those rulings there was no exception by the defendant. It seems, therefore, that the only exception relating to the sufficiency of the plaintiff's proof to justify the recovery was that taken at the close of the plaintiff's evidence, which was waived by the omission of the defendant to renew the motion upon those grounds at the close of the case. If this conclusion is correct, then it follows that the question of the sufficiency of the evidence to sustain the recovery is not properly before this court for determination.

The judgment should be affirmed, with costs.

Parker, Ch. J., Gray, Haight, Vann, Cullen and Werner, JJ., concur.

Judgment affirmed.