In re C. MOENCH & SONS CO.

(District Court, W. D. New York. July 28, 1903.)

No. 1,448.

1. BANKRUPTS—CORPORATIONS—ACTS OF DIRECTORS.

Where a state court seized the property of an alleged bankrupt corporation, and the appointment of receivers by the state court was subsequently confirmed by the federal court in a bankruptcy proceeding against the corporation previously commenced, such facts did not deprive the corporation's directors, acting for it, of the right to adopt a resolution declaring its inability to pay its debts, and its willingness to be adjudged a bankrupt.

2. SAME—COLLUSION—ESTOPPEL.

Where petitioning creditors to have a corporation adjudged a bankrupt instituted such proceedings in order that all the creditors should share equally in the bankrupt's estate, and, to this end, obtained the consent

of the corporation to declare its inability to pay its debts, and willingness to be adjudged a bankrupt, as authorized by Bankr. Act 1898, § 3, subd. 5 (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), such creditors were not estopped to urge the corporation's resolution as an act of bankruptcy, on the ground of collusion, as against an attaching creditor, who, in case the bankruptcy proceedings were dismissed, would obtain a preference by his attachment.

**8. SAME.**

Where a corporation, by vote of its directors, declared its inability to pay its debts, and its willingness to be adjudged a bankrupt, as authorized by Bankr. Act 1898, § 3, subd. 5, on request of certain creditors the latter were entitled to have the corporation adjudged a bankrupt, without regard to its solvency.

In Bankruptcy.

Henry G. Atwater, Vernon Cole, and Lyman K. Bass, for petitioners.

Romer & Harrington, for Eliot National Bank.

HAZEL, District Judge. This is an involuntary proceeding in bankruptcy, instituted by petitioning creditors, to have C. Moench & Sons Company adjudged bankrupt. The petition was filed May 9, 1903. The Eliot National Bank, of Boston, an attaching creditor, filed an answer to the petition, challenging the good faith of the petitioning creditors, and alleging substantially that the petition was made to collusively invoke the provisions of the bankruptcy act. It was also alleged in the answer that the bankrupt corporation was not insolvent. Prior to the filing of the petition above referred to, two other petitions by different creditors, alleging different grounds of bankruptcy, were filed, to have C. Moench & Sons Company adjudicated bankrupt. The first petition was based on the ground that the appointment of receivers by the state court in a proceeding to dissolve the corporation, and the possession by them of the res in the proceeding to dissolve the corporation, was an act of bankruptcy; the second, on the ground that the bankrupt had made a transfer of property, intending to hinder and delay and defraud its creditors; and the third, now under consideration, on the ground that C. Moench & Sons Company has committed an act of bankruptcy, by admitting in writing its inability to pay its debts, and its willingness to be adjudged a bankrupt on that ground.

It is contended by the opposing creditor that the bankrupt corporation, by virtue of the proceeding in the state court, had ceased to do business at the time when the directors adopted the resolution relating to the inability of the corporation to pay its debts, and its willingness to be adjudicated bankrupt; that as the state court had previously seized the property of the alleged bankrupt, through its receivers, the directors were powerless to give legal effect to their action; hence the bankrupt, not being engaged in any business of the class specified under section 4 of the bankruptcy act, could not be adjudged an involuntary bankrupt. This contention is without merit. The appointment of the receivers by the state court, and subsequently by this court, in the proceedings first commenced, did not deprive the directors, acting for the corporation, of the right to exercise functions which

were intended to benefit the creditors of the corporation, and to truthfully advise them of its financial status, to the end that there might be an equitable distribution of the assets of the corporation among them. The life of the corporation was not terminated by the proceedings instituted in the state court, nor was the character of the business for which it was incorporated changed thereby. Kincaid v. Dwinelle, 59 N. Y. 549; Decker v. Gardner, 124 N. Y. 334, 26 N. E. 814, 11 L. R. A. 480; Sigua Iron Co. v. Brown, 171 N. Y. 488, 64 N. E. 194. Neither were the directors enjoined from confessing the inability of the corporation to pay its obligations, and from asserting willingness to be adjudged bankrupt on account thereof. Such action on the part of the directors cannot be twisted into an unlawful interference with the management of the corporation by the receivers. In my mind, it was eminently proper for the directors, under the circumstances of this case, to disclose to the creditors the financial condition of the corporation. The proceedings instituted in the state court to dissolve the corporation, the subsequent attachment of a considerable amount of its property by the opposing creditor, followed by the initial petition of creditors to have the corporation adjudicated bankrupt, were abundant reasons for the subsequent action by the directors, the effect of which was to allow the creditors to protect their interests. This view finds support in Dickerman v. Northern Trust Co., 176 U. S. 181, 20 Sup. Ct. 311, 44 L. Ed. 423, and other cases.

Irrespective, therefore, of the point that the state court obtained jurisdiction of the property of the bankrupt before proceedings were begun in this court, the primary and sole question for decision here is whether an act of bankruptcy was committed by the corporation proceeded against. As to whether a conflict of jurisdiction may arise in the future is not now a pertinent question, and need not be considered. In re Safe Deposit & Savings Institution, Fed. Cas. No. 12,211; In re Kersten (D. C.) 110 Fed. 929; In re Lengert Wagon Co. (D. C.) 110 Fed. 927; Mauran v. Crown Carpet Lining Co., 6 Am. Bankr. R. 735, 50 Atl. 331, 387.

As to collusion, is such a state of facts disclosed as will justify invoking the doctrine of equitable estoppel because of any collusive acts between the corporation and petitioning creditors? The basis of the charge of collusion must be the agreement between the corporation and the petitioning creditors to have the corporation adjudicated, with a view to deprive the Eliot National Bank of its legal rights by the forms of law, and to secure thereby to themselves a benefit to which they were not legally entitled. Had the object aimed at by the petitioning creditors and the alleged bankrupt been achieved by the unlawful use of legal procedure, the contention of the opposing creditor might well be controlling; but such, in my opinion, is not shown to have been the fact. It has been held many times that the doctrine of estoppel has application in bankruptcy. For example, creditors having received preferences are forbidden to be petitioning creditors unless they surrender the preferences received. Brandenberg on Bankruptcy, p. 578; Simonson v. Sinsheimer, 95 Fed. 948, 37 C. C. A. 337; In re Gillette (D. C.) 104 Fed. 769. Creditors receiving the benefits of a general assignment for the benefit of creditors may be

estopped from alleging the assignment as an act of bankruptcy. In re E. G. Williams, Fed. Cas. No. 17,703; In re Miner (D. C.) 104 Fed. 520. These cases, however, in applying the principle of estoppel, are based upon the fact that the creditors participated in a fraudulent or unlawful use or connived in the alleged act of bankruptcy to their own advantage, as against the interests of general creditors, and hence do not come into the court with clean hands. The rule of estoppel in pais, as applied in a court of bankruptcy, is not at variance with the general rule upon which that principle finds support in ordinary cases in equity. Invariably the enunciated principles are based upon mala fides, and upon acts, conduct, or declarations by a party to induce another to rely upon such acts or declarations to his detriment. Dickerman v. Northern Trust Company, supra; In re Curtis, 2 Am. Bankr. R. 228, 94 Fed. 630, 36 C. C. A. 430. I have carefully considered the evidence before the referee, with a view of satisfying my mind of the soundness of the charge laid at the door of the petitioning creditors and the alleged bankrupt. The motive on the part of each appears to have been free from fraud and collusion, as that term is legally defined. The object sought to be obtained by the petitioning creditors was the adjudication of C. Moench & Sons Company as bankrupts, because of the commission of the act of bankruptcy, to the end that the assets of the corporation may be distributed in equal proportions among all of the creditors, for such must be the inevitable result of adjudication. This was a lawful purpose, even if the petitioning creditors were solicited to file their petition by the directors of the corporation, or even if the corporation complied with the provisions of section 3, subd. 5 (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), on the request of a creditor. No greater benefit can be received by the petitioning creditors by their action. Enough is shown by the evidence adduced before the referee to conclude that the action by the board of directors in committing the act of bankruptcy was reasonably well founded, and not owing to any unlawful connivance in the alleged act of bankruptcy by the petitioners. The provisions of the bankrupt act (section 3, subd. 5) empowers a debtor corporation to declare its inability to pay its debts, and its willingness to be adjudged a bankrupt. Upon such admission and consent in writing, an adjudication may be properly based; and it is sufficient in legal effect if the board of directors, who were charged with the conduct of the business of the corporation, complied with the legal requirements specified. In re Marine Machine & Conveyor Co. (D. C.) 91 Fed. 630; Dickerman v. Trust Co., supra; In re Mutual Mercantile Agency (D. C.) 111 Fed. 152; In re Peter Paul Co. (D. C.) 104 Fed. 786; In re Lengert Wagon Co., supra; In re T. L. Kelly Dry Goods Co. (D. C.) 102 Fed. 747. The cases hold it to be immaterial whether the corporation is insolvent in fact. It is settled by George M. West Co. v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098 (a controlling authority), that the acts of bankruptcy set forth in subdivisions 4, 5, § 3, of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), are such acts of bankruptcy per se, irrespective of the insolvency of the alleged bankrupt. The precise principle in that case applies here. The creditors are notified by the

resolution passed by the directors of the financial condition of the corporation, which is made emphatic by the willingness of the corporation to be adjudicated.   It is then in the province of the creditors to institute proceedings in a court of bankruptcy to protect their interests. The proceedings adopted in the case at bar were lawful, and were conducted in the manner and form specifically provided by law.   No such relations between the debtors and petitioning creditors, or those who represent them, are shown by the evidence as would justify holding that the zeal displayed by counsel representing creditors was owing to the asserted illegal purpose.   It is admitted that the petitioning creditors here and the petitioning creditors named in the prior petitions and the directors co-operated together, but for what purpose?   Was it to collusively make use of the form of law to the injury of the Eliot National Bank, or to deprive the bank from obtaining a preference which would result to the disadvantage of all other creditors of the estate? The evidence is persuasive of the latter, and against such result a remedy was afforded by the bankruptcy act.   The adjudication will operate to the benefit of all.   Every creditor of the alleged bankrupt is as much a party to the proceeding as are the petitioners.   The estate must, after adjudication, be distributed for the benefit of all.   The doctrine of equity has been invoked in a court of bankruptcy to the assistance of a creditor having received a preference.   It would seem that other equitable principles should be applied, which would operate for the benefit of the majority of creditors, rather than to secure the preference of a single objector.

In accordance with these views, the referee properly rejected the evidence offered by the objecting creditors tending to show solvency.

For the reasons above stated, an order adjudicating C. Moench & Sons Company bankrupt may be entered.