FLORIDA GABOURY, as Ancillary Administrator, etc., of AIME GABOURY, Deceased, Respondent, *v.* CENTRAL VERMONT RAILWAY COMPANY, Appellant.*

Third Department, November 15, 1928.

*Fryer & Lewis* [*Charles G. Fryer* of counsel], for the appellant, appearing specially.

*Leary & Fullerton* [*Edward W. Barrett* and *Walter A. Fullerton* of counsel], for the respondent.

---

* Affg. 132 Misc. 144; revd., 250 N. Y. 233.

WHITMYER, J. Whether or not the Supreme Court of this State has jurisdiction of defendant and of the subject-matter of the action is the question.

Intestate was injured at Williston, Vt., in the course of his work for defendant, and died on November 25, 1927, as the result of his injuries. He resided in Vermont and letters of administration upon his estate were granted there, whereupon ancillary letters were granted in Clinton county, this State, and this action was then brought in Schenectady county, this State, under the Federal Employers' Liability Act. The action could be brought in this State, if defendant was doing business within the State. (Federal Employers' Liability Act [35 U. S. Stat. at Large, 66], § 6, as amd. by 36 id. 291, chap. 143, § 1; now U. S. Code, tit. 45, § 56; Gen. Corp. Law, § 47 as added by Laws of 1920, chap. 916.) Defendant railroad is located, mostly, in Vermont, but extends into Clinton county, this State, where it operates engines and trains in yard service and in switching and making up trains and where it owns property and pays taxes. It was doing business within this State at the time the cause of action accrued, and service of the summons and complaint was made upon a director in this State. (Stoddard v. Manzella, 207 App. Div. 519; Levey v. Payne, 200 id. 30; Polley v. Lehigh Valley R. R. Co., 138 id. 636; affd., 200 N. Y. 585; Civ. Prac. Act, § 229, subd. 3; Tauza v. Susquehanna Coal Co., 220 N. Y. 259.) But receivers of its property were appointed, with the consent of the defendant, on December 14, 1927, and were acting at the time of the service and the question arises whether or not the corporation was then doing business here and whether or not the action may be maintained against it. The bill of complaint under which the receivers were appointed does not appear in the record and the order does not state the grounds of their appointment, but, under it, they were invested with the powers of receivers in equity, of all and singular the property, premises and assets of the company, of every name and nature, real, personal and mixed, and wherever situated and were authorized and directed forthwith to take possession thereof, to preserve, manage, operate and use the same, to run and operate the railroads and to conduct the business according to law and the principles, rules and practice in equity in such cases and to do all things necessary or convenient therefor. Further, they were authorized and directed to collect all moneys due or to become due to the company, to institute and prosecute suits in their names as receivers or in the name of the company, as counsel might advise, and to defend such suits as

might be brought against them or those then pending or thereafter brought against the company affecting or which might affect the property of which they were appointed receivers. Out of the moneys coming into their hands, they were authorized to pay necessary operating, conserving, repairing and reconstructing expenses, taxes and assessments, installments of principal and interest, rentals for leased lines, and claims incurred within six months preceding the order for wages and salaries of employees, traffic and car mileage balances, and accounts for certain repairs, materials and supplies. It seems clear that they were appointed not to dissolve the company, but to take possession of its property and to manage its affairs for some temporary purpose and that they were appointed temporary receivers. There is no suggestion of dissolution and their appointment did not change the title, nor did it work a dissolution. The effect was simply to put the property in their custody as officers of the court and to confer upon them the incidental powers necessary to carry on the business, but the corporate franchise was not dissolved. As to the incidental powers, their authority superseded the authority of the directors, but the corporation continued as a legal entity. (*Bank of Bethel* v. *Pahquioque Bank*, 81 U. S. [14 Wall.] 383, 398, 400; *Union Bank of Chicago* v. *Kansas City Bank*, 136 U. S. 223, 236; *Sigua Iron Co.* v. *Brown*, 171 N. Y. 488, 494.) Formerly, it was the rule that a receiver appointed by the court could not be sued without leave of the court. (*Davis* v. *Gray*, 16 Wall. 203, 218; *Barton* v. *Barbour*, 104 U. S. 126.) But the rule was changed by section 66 of the United States Judicial Code (36 U. S. Stat. at Large, 1104; now U. S. Code, tit. 28, § 125), which provided that every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed, but such suit shall be subject to the general equity jurisdiction of the court. Speaking of this statute in *Baer* v. *McCullough* (176 N. Y. 97, 103) the Court of Appeals said that it clearly indicates that it was a part of the congressional scheme that the appointment of receivers of great corporations like railroads should not operate to prevent parties having claims against such corporations, or against the receivers thereof, from proceeding in the courts of the neighborhood precisely as they could have done when the corporation was managing the property. Here, the claim arises out of a tort, which was committed before the receivers were appointed, and the act of Congress, permitting suit against receivers without leave is limited in respect of any act or transaction

on their part in carry'ng on the business connected with the property. Moreover, the receivers were authorized to defend only such suits as might be brought against them or those then pending, or thereafter brought against the company, affecting or which might affect the property of which they were appo nted receivers. And the order does not include a claim of this kind among those which they are authorized to pay. Thus to sue the receivers, leave was necessary, or action aga'nst the corporation in a State court was necessary. The action was commenced and we reach the question whether or not it may be maintained. The question has been decided in this State. (*Kincaid* v. *Dwinelle*, 59 N. Y. 548, 553; *Pringle* v. *Woolwor'h*, 90 id. 502, 510; *Decker* v. *Gardner*, 124 id. 334, 339, 341.) In the *Kincaid* case the court said the corporation "may be dormant, its vitality suspended as respects the exercise of its corporate powers, but it may, nevertheless, be liable to be proceeded against, by action, for any purpose for which an action would be available to any one having a right to sue." In the *Pringle* case the court said: "Until judgment dissolving the corporation and ending its existence, the contract could be enforced against the company as well after as before the appointment of the receiver." In the *Decker* case the action was for trespass committed before the appointment of the receiver and the court said that the receiver had nothing to do with the trespass, that the corporation was alone liable, and that there was no legal obstacle to an action against the corporation. That the action may be maintained seems clear. Defendant has no property in Schenectady county and does not operate there. But, after answer and on motion, if one is made, the place of trial may be changed to the county in this State where it has property and is doing business. (See Civ. Prac. Act, § 182, as amd. by Laws of 1925, chap. 493; Id. §§ 186, 187.) And, finally, the trial court, in the exercise of discretion, may decline to accept jurisdiction. (*Murnan* v. *Wabash R. Co.*, 246 N. Y. 244, 248.)

The order should be affirmed, with costs.

VAN KIRK, P. J., and DAVIS, J., concur; HILL, J., dissents, with an opinion, in which HINMAN, J., concurs.

HILL, J. (dissenting). I dissent. The order which appointed receivers directed them to take possession " of all and singular the railroads, rolling stock, franchises, liens, claims, rights, interests, leaseholds, property, premises and assets of every name and nature, real, personal and mixed, and wherever situated, * * * and they are hereby authorized and directed * * * to preserve, manage, operate and use the same, to run and operate the rail-

roads now held by said Railway Company as owner, lessee or otherwise, and to conduct the business of said railway company according to law and in accordance with the principles, rules and practice in equity in cases of this character, and to do all things necessary or convenient therefor," and restrained the railroad corporation and its officers fiom operating the railroad or interfering with the property. The receivers had taken possession of all of defendant's property. The corporation had no business except to operate the railroad. The railroad was being operated by the receivers. The property and facilities of the corporation were used by the receivers in their operation of the railroad. The question is, was defendant " doing business " in this State, not whether its facilities were being used. (*Missouri Pacific Railroad Co.* v. *Ault*, 256 U. S. 554.) In that case Mr. Justice BRANDEIS said in deciding that a railroad company was not operating a railroad during the administration of the Director-General (p. 559): " The situation was analogous to that which would exist if there were a general receivership of each transportation system." I believe the receivers were doing bus ness, but that the defendant corporation was not.

HINMAN, J., concurs.

Order affirmed, with ten dollars costs and disbursements.