# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 54
Anna Aybar, et al.,
     Appellants,
    v.
Jose A. Aybar, Jr., et al.,
     Defendants,
Ford Motor Company et al.,
     Respondents;
U.S. Tires and Wheels of Queens,
LLC,
    Nonparty-Respondent.

Jay L.T. Breakstone, for appellants.
Sean Marotta, for respondent Ford Motor Company.
Jayne Risk, for respondent The Goodyear Tire & Rubber Co.
New York State Trial Lawyers' Association; New York State Bar Association; Alan B. Morrison, et al.; American Association for Justice; New York City Bar Association; Chamber of Commerce of the United States of America et al., amici curiae.

SINGAS, J.:

The Business Corporation Law requires foreign corporations seeking authorization to do business in New York to register with the New York Secretary of State and designate an in-state agent for service of process. The question before us on this appeal is whether a

- 1 -

foreign corporation consents to the exercise of general jurisdiction by New York courts by registering to do business here and designating a local agent for service of process. We conclude that a foreign corporation's compliance with the relevant statutory provisions constitutes consent to accept service of process in New York; that compliance does not constitute consent to general jurisdiction in New York courts.

I.

In July 2012, defendant Jose A. Aybar, Jr., a New York resident, was operating a Ford Explorer on an interstate highway in Virginia. The vehicle overturned multiple times after its Goodyear tire allegedly failed, resulting in the death of three passengers and injuries to three other passengers. The surviving passengers and the representatives of the deceased passengers' estates (plaintiffs) commenced this action against defendants Aybar, Ford Motor Company (Ford), and The Goodyear Tire & Rubber Co. (Goodyear), asserting, among other things, products liability claims against Ford and Goodyear.

Aybar purchased the vehicle in New York from a third party. Ford did not sell the vehicle in this state in the first instance, nor did Ford design or manufacture the vehicle here. Similarly, Goodyear designed, manufactured, and initially sold the tire in other states. It is undisputed that Ford was incorporated in Delaware and maintains its principal place of business in Michigan and that Goodyear was incorporated and has its principal place of business in Ohio. At all relevant times, Ford and Goodyear were registered with the New York Secretary of State as foreign corporations authorized to do business in this state and

had appointed in-state agents for service of process in accordance with the Business Corporation Law.

Ford and Goodyear separately moved to dismiss the complaint against them pursuant to CPLR 3211 (a) (8) on the ground that New York courts lacked personal jurisdiction.  Plaintiffs opposed both motions, arguing, as relevant here, that by registering to do business in New York and appointing an in-state agent for service of process, a foreign corporation knowingly consents to general jurisdiction in this state's courts.

Supreme Court denied the motions in separate orders, concluding that New York courts could exercise general jurisdiction over Ford and Goodyear.  Citing *Bagdon v Philadelphia & Reading Coal & Iron Co.* (217 NY 432 [1916]), the court determined that Ford and Goodyear consented to general jurisdiction by registering to do business in New York as a foreign corporation and designating a local agent for service of process.

The Appellate Division reversed the orders and granted the motions of Ford and Goodyear to dismiss the complaint as to them (*see* 169 AD3d 137, 152-153 [2d Dept 2019]).  Citing *Bagdon* and other authority, the Court agreed with the motion court that "[t]here has been longstanding judicial construction" that a foreign corporation's registration to do business in New York and appointment of an in-state agent constituted consent to general jurisdiction (*id.* at 147).  The Court determined, however, that "*Bagdon* must be understood within the historical context in which it was decided" and, in light of recent Supreme Court precedent clarifying the permissible grounds for general jurisdiction, the Court concluded that "it cannot be said that a corporation's compliance with the

existing business registration statutes constitutes consent to the general jurisdiction of New York courts" (*id.* at 147-148).

We granted plaintiffs leave to appeal from the Appellate Division order (*see* 34 NY3d 905 [2019]) and now affirm.

II.

To begin, we clarify what issues are—and are not—presented here. Plaintiffs concede that they did not assert below that New York courts had specific jurisdiction over Ford and Goodyear under New York's long-arm statute, CPLR 302. As a result, that issue is unpreserved for our review. In addition, plaintiffs have abandoned any argument that Ford and Goodyear are essentially at home in New York such that general jurisdiction exists pursuant to *Goodyear Dunlop Tires Operations, S.A. v Brown* (564 US 915 [2011] ["*Goodyear*"]) and *Daimler AG v Bauman* (571 US 117 [2014] ["*Daimler*"]). The sole issue before us, as presented by the parties, is whether Ford and Goodyear consented to general jurisdiction in New York by registering to do business here and appointing a local agent for service of process, in compliance with the Business Corporation Law.[1] For the

---

[1] Plaintiffs do not argue that defendants consented to jurisdiction by any other available means. For instance, parties may contract or stipulate to submit to personal jurisdiction in a particular court through appropriate forum-selection agreements (*see Insurance Corp. of Ireland v Compagnie des Bauxites de Guinee*, 456 US 694, 703-704 [1982]; *Burger King Corp. v Rudzewicz*, 471 US 462, 472 n 14 [1985]).

reasons that follow, we conclude, as a matter of New York law, that Ford and Goodyear did not consent to general jurisdiction in New York courts.[2]

As relevant here, the Business Corporation Law sets forth the steps a foreign corporation must take to obtain authorization to do business in New York. Business Corporation Law § 1301 (a) provides that a foreign corporation "shall not do business in this state until it has been authorized to do so." As part of the registration process, a foreign corporation's application for authority to do business in New York must include "[a] designation of the secretary of state as its agent upon whom process against it may be served" (Business Corporation Law § 1304 [a] [6]). Section 304 likewise provides that "[n]o . . . foreign corporation may be . . . authorized to do business in this state . . . unless in its . . . application for authority it designates the secretary of state" as "the agent . . . upon whom process against the corporation may be served" (id. § 304 [a], [b]). Further, if a foreign corporation "is to have a registered agent," it must identify that agent's "name and address within this state" and declare "that the registered agent is to be its agent upon whom process against it may be served" (id. § 1304 [a] [7]).

These statutory provisions plainly require that, in order to do business in New York, a foreign corporation must register and designate an in-state agent for service of process. The statutes do not, however, condition the right to do business on consent to the general

_____

[2] Contrary to the dissent's implication, we do not, nor would it be appropriate for us to, opine as to whether the facts of this case would render Ford or Goodyear subject to personal jurisdiction in other states (see dissenting op at 2).

jurisdiction of New York courts or otherwise afford general jurisdiction to New York courts over foreign corporations that comply with these conditions. A different reading would improperly "amend [the] statute by adding words that are not there" (*American Tr. Ins. Co. v Sartor*, 3 NY3d 71, 76 [2004]) and would impermissibly "read into a statute a provision which the [l]egislature did not see fit to enact" (*Matter of Chemical Specialties Mfrs. Assn. v Jorling*, 85 NY2d 382, 394 [1995] [internal quotation marks and citation omitted]). Accordingly, a foreign corporation's registration to do business and designation of an agent for service of process in New York does not constitute consent to general jurisdiction under the Business Corporation Law's plain terms (*see Kuzmich v 50 Murray St. Acquisition LLC*, 34 NY3d 84, 91 [2019], *cert denied* __ US __, 140 S Ct 904 [2020] [a court must give effect to the plain meaning of the statute's language]).[3]

Nevertheless, citing *Bagdon* and other authority, plaintiffs argue that registering to do business in New York and appointing an agent for service of process constitutes consent to general jurisdiction (*see* 217 NY 432; *Chufen Chen v Dunkin' Brands, Inc.*, 954 F3d 492, 498 [2d Cir 2020]), and that the assertion of general jurisdiction under such a theory

---

[3] It appears that every state has enacted business registration statutes, though they vary in language and effect (*see e.g.* 42 Pa C S § 5301 [a] [2] ["qualification as a foreign corporation" under Pennsylvania's laws "shall constitute a sufficient basis of jurisdiction" for Pennsylvania courts "to exercise general personal jurisdiction"]). Interpreting their own statutes or common law, courts in other states have reached correspondingly diverse conclusions concerning whether registration and designation of an agent for service of process within the state constitutes consent to general jurisdiction (*compare Cooper Tire & Rubber Co. v McCall*, __ Ga __, 2021 WL 4268074, *1, 2021 Ga LEXIS 626, *1 [Ga 2021], *with Thomson v Anderson*, 113 Cal App 4th 258, 268 [Cal Ct App 2003]).

is permissible (*see Neirbo Co. v Bethlehem Shipbuilding Corp.*, 308 US 165 [1939];

*Pennsylvania Fire Ins. Co. of Philadelphia v Gold Issue Mining & Milling Co.*, 243 US 93

[1917]). Plaintiffs' interpretation of *Bagdon* is incorrect. Rather, when viewed in the

context of the controlling jurisprudence of the time, *Bagdon*'s holding was far narrower

than plaintiffs urge. Our holding in *Bagdon*, properly understood, was limited to the effect

of service of process to which a foreign corporation consented; we did not determine that

a foreign corporation consented to general jurisdiction by registering to do business and

designating an agent for service of process.

In *Bagdon*, the plaintiff, a New York resident, was injured while working in

Pennsylvania for the defendant, a Pennsylvania corporation (*see* 217 NY at 433). The

parties agreed that the defendant would compensate the plaintiff for his injuries, and the

plaintiff later commenced the action in New York asserting a breach of that contract. The

defendant conceded that it was engaged in unrelated business in New York. It was also

registered to do business here and had designated an in-state agent to accept service of

process in accordance with the registration statutes in effect at that time (*see id.*; former

General Corporation Law § 16).[4] The plaintiff commenced the action by serving process

---

[4] The General Corporation Law provisions at issue were similar—though not identical—
to those in effect today. In 1916, New York's registration statutes said that foreign
corporations must procure a certificate to do business that could issue only after the
corporation filed a statement with the secretary of state designating a principal place of
business in the state and "a person upon whom process against the corporation may be
served within the state," which person was required to have an office in the corporation's
in-state principal place of business (former General Corporation Law § 16; *see id.* § 15).
Although a foreign corporation was barred from maintaining any actions on its in-state
contracts unless it had complied with these requirements (*see id.* § 15), at the time of our

on the defendant's designated New York agent.  The defendant moved to dismiss, arguing

that because the plaintiff's "cause of action owe[d] its origin to business transacted in

Pennsylvania[,] . . . the service [was] invalid" as the designated agent's authority to accept

service in New York "must be limited to actions which arise out of the business transacted

in New York" (*Bagdon*, 217 NY at 433-434).  The issue presented to this Court was thus

limited to whether the effect of the service to which the defendant had consented extended

to causes of action unrelated to its business transacted in New York.

Resolving that narrow issue, we held that the service had the effect of conferring

jurisdiction over the defendant corporation for any subject matter jurisdiction properly

exercised by New York courts.  We first determined that the defendant's designation of an

in-state agent for service of process, in compliance with the statute, was "a real consent"

or "true contract" for the designated person to accept "process against the corporation" (*id.*

at 436 [internal quotation marks omitted]).  In other words, the designation amounted to

consent to in-state service.  We did not conclude, however, as the dissent would have it,

that the corporation's registration and designation of an agent, by itself, constituted consent

to general jurisdiction (*see* dissenting op at 14).  If we had, our analysis would have ended

with our determination that the defendant's statutory consent to accept service through its

---

decision in *Bagdon*, we concluded that unlicensed business was "not illegal" (217 NY at
436).  While that may have been true in 1916, it is not the case anymore.  Indeed, contrary
to the dissent's statement that an unregistered foreign corporation loses "only the ability to
bring suit" in New York courts (dissenting op at 30), today, the Attorney General has power
to commence litigation to restrain a foreign corporation from doing unauthorized business
in this state (*see* Business Corporation Law §§ 1301, 1303).

designated agent was effective. We continued our analysis, however, separately "ascertain[ing] the meaning and defin[ing] the effect of" the service made in accordance with the defendant's consent to accept service under the statute (*Bagdon*, 217 NY at 436).

We examined this effect-of-service question through the lens of the then-applicable jurisdiction principles and in light of the fact that the defendant's presence in New York was not in dispute. Indeed, the defendant conceded that it was doing business in New York, had registered to do business here, and had consented to service under the then-governing General Corporation Law by designating an in-state agent to accept service (*see id.* at 433). We ultimately held that the effect of the in-state service on the defendant's designated agent was to provide New York courts with what we would now term "general jurisdiction" or, as Judge Cardozo described it in the parlance of the time, the defendant was "subject to the rule that transitory causes of action are enforceable wherever the defendant may be found" (*id.* at 439). That is, the Court determined that jurisdiction existed not because the corporation "consented" to it, but because then existing Supreme Court precedent established, consistent with *Pennoyer v Neff*'s territorial approach, that in-state service on a foreign corporation present in the state afforded general jurisdiction (*see* 95 US 714, 720 [1878]; *see also St. Louis Southwestern R. Co. of Tex. v Alexander*, 227 US 218, 226 [1913]; *St. Clair v Cox*, 106 US 350, 359-360 [1882]).

*Bagdon* has been interpreted by others as holding, under the common law, that foreign corporations that have abided by the aforementioned registration and designation statutes have thereby contractually consented, not only to service of process on a

designated agent, but to general jurisdiction in New York. However, any such interpretation is a misreading of our decision that fails to appreciate the narrow scope of the issue presented in that case and, more critically, its historical context. We determined in *Bagdon* that a foreign corporation's registration to do business and appointment of a local agent for service of process constituted consent to accept service of process in New York in connection with any matter, and the effect of that service there, where the defendant's presence in New York was not disputed, was to afford our courts jurisdiction even over claims that did not arise from the corporation's New York business.

A year after *Bagdon* was decided, we again addressed whether personal jurisdiction existed over a foreign corporation in *Tauza v Susquehanna Coal Co.* (220 NY 259 [1917]). In *Tauza*, the foreign corporation was not registered to do business in New York and had not designated an in-state agent for service of process. The case therefore turned on the propriety of the plaintiff's in-state service on the foreign corporation's managing sales agent (*see* former Code Civ Pro § 432 [3]). After reviewing the extent of the defendant corporation's business activities in New York, we concluded that it was present in New York because it was "engaged in business within this state" to "such a degree as to subject" it "to the jurisdiction of our courts" (*Tauza*, 220 NY at 266, 268). Because the defendant foreign corporation was "here," we explained that "it may be served" with process (*id.* at 269). Citing *Bagdon*, we determined that service upon the agent had the effect of conferring New York courts with general jurisdiction over the defendant corporation. The "essential thing" in both *Bagdon* and *Tauza* was that the corporation was present in this

state because "[w]hen once it is here, it may be served; and the validity of the service is independent of the origin of the cause of action" (*id.* at 268-269).  We therefore reached the same ultimate conclusion in *Tauza* as we had in *Bagdon*—in-state service on a foreign corporation present in New York had the effect of conferring general jurisdiction over that corporation in accord with then-governing federal law.[5]

Neither case "established 'general' personal jurisdiction through consent by registration" (dissenting op at 16).  We never held in *Bagdon* that designation of an agent constituted consent to general jurisdiction.  Moreover, the analysis a court would undertake to determine the *effect* of service in New York on a designated agent would be different today than it was at the time of our decision in *Bagdon*.

In that regard, it has consistently been understood that "[t]he Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant" (*Goodyear*, 564 US at 923).  "Due process requires that the defendant be given adequate notice of the suit and be subject to the personal jurisdiction of

---

[5] *Tauza* exemplifies the inaccuracy of the dissent's conclusions that, at the time of *Bagdon*, "presence in New York was legally irrelevant" and "without consent, the fact that a foreign corporation did business in New York would not have allowed for jurisdiction over it for causes of action that did not arise from its operations in New York" (dissenting op at 17, 18).  Of course, at that time, a foreign corporation could "subject[] itself to . . . jurisdiction" in New York, absent consent, by "doing business within our borders" when service was made upon an appropriate corporate officer or agent (*Gaboury v Central Vt. Ry. Co.*, 250 NY 233, 236 [1929]).  And as *Tauza* held, citing *Bagdon*, when "the defendant corporation is engaged in business within this state . . . the jurisdiction does not fail because the cause of action sued upon has no relation in its origin to the business here transacted" (*Tauza*, 220 NY at 268).

the court" (*World-Wide Volkswagen Corp. v Woodson*, 444 US 286, 291 [1980] [internal citation omitted]). Consistent with this principle, we have explained that the "constitutional predicates of personal jurisdiction" contain two components (*Keane v Kamin*, 94 NY2d 263, 265 [1999]). The first "component involves service of process, which implicates due process requirements of notice and opportunity to be heard" (*id.*). "The other component of personal jurisdiction involves the power, or reach, of a court over a party, so as to enforce judicial decrees" (*id.*; *see Flick v Stewart-Warner Corp.*, 76 NY2d 50, 57 [1990]).

Supreme Court jurisprudence defining the contours of the personal jurisdiction analysis has evolved significantly over time. Shortly after the Fourteenth Amendment was ratified, the Supreme Court determined in *Pennoyer* that "[t]he authority of every tribunal is necessarily restricted by the territorial limits of the [s]tate in which it is established" (95 US at 720). In other words, under *Pennoyer* a defendant had to be present within the court's territorial jurisdiction before the court could assert personal jurisdiction over that defendant (*see International Shoe Co. v Washington*, 326 US 310, 316 [1945] ["*International Shoe*"]). *Pennoyer*'s territorial approach governed when we decided *Bagdon*.

Decades later, the Supreme Court decided *International Shoe*, a "transformative decision on personal jurisdiction" (*BNSF R. Co. v Tyrrell*, 581 US __, __, 137 S Ct 1549, 1557 [2017]) and a "momentous departure from *Pennoyer*'s rigidly territorial focus" (*Daimler*, 571 US at 128; *see World-Wide Volkswagen Corp.*, 444 US at 293). There, the Court expanded the states' permissible exercise of jurisdiction by holding that they could

exercise personal jurisdiction over an out-of-state defendant, in accord with the Due Process Clause, if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" (*International Shoe*, 326 US at 316 [internal quotation marks and citation omitted]). "Following *International Shoe*, 'the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the [s]tates on which the rules of *Pennoyer* rest, became the central concern of the inquiry into personal jurisdiction'" (*Daimler*, 571 US at 126, quoting *Shaffer v Heitner*, 433 US 186, 204 [1977]; *see Keane*, 94 NY2d at 265 ["To satisfy the jurisdictional basis there must be a constitutionally adequate connection between the defendant, the (s)tate(,) and the action"]).

*International Shoe* crystallized the two categories of personal jurisdiction that we now recognize, "general or all-purpose jurisdiction[] and specific or case-linked jurisdiction" (*Goodyear*, 564 US at 919). The former permits a court to exercise jurisdiction over a defendant in connection with a suit arising from events occurring anywhere in the world, whereas the latter permits a court to exercise jurisdiction only where the suit arises out of or relates to the defendant's contacts with the forum state (*see Bristol-Myers Squibb Co. v Superior Court of Cal., San Francisco Cty.*, 582 US __, __, 137 S Ct 1773, 1780 [2017]). "Since *International Shoe*, 'specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role'" inasmuch as the Supreme Court has "declined to stretch general jurisdiction beyond limits traditionally recognized" (*Daimler*, 571 US at 128, 132, quoting *Goodyear*, 564 US

at 925). Thus, while specific jurisdiction has rapidly expanded (*see id.* at 128; *see also Ford Motor Co. v Montana Eighth Judicial Dist. Court*, 592 US __, __, 141 S Ct 1017, 1024-1025 [2021]), the Supreme Court has limited general jurisdiction's reach to a narrow class of defendants.

Today, "the exercise of general jurisdiction in every [s]tate in which a corporation engages in a substantial, continuous, and systematic course of business" would be "unacceptably grasping" (*Daimler*, 571 US at 138 [internal quotation marks and citation omitted]; *see Goodyear*, 564 US at 927). Following *Goodyear* and *Daimler*, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the [s]tate are so 'continuous and systematic' as to render them essentially at home in the forum [s]tate" (*Goodyear*, 564 US at 919; *see Daimler*, 571 US at 122).[6] "With respect to a corporation, the place of incorporation and principal place of business are paradigm . . . bases for general jurisdiction" because these are places where a corporation "is fairly regarded as at home" (*Daimler*, 571 US at 137 [internal quotation marks, brackets, and citations omitted]). The Court left the door open to "the possibility that . . . a corporation's operations in a forum

---

[6] New York's statute governing general jurisdiction is CPLR 301, which states that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Prior to *Goodyear* and *Daimler*, this Court held that "[a] foreign corporation is amenable to suit in New York courts under CPLR 301 if it has engaged in such a continuous and systematic course of doing business here that a finding of its presence in this jurisdiction is warranted" (*Landoil Resources Corp. v Alexander & Alexander Servs.*, 77 NY2d 28, 33 [1990] [internal quotation marks and citation omitted]; *see also McGowan v Smith*, 52 NY2d 268, 272-273 [1981]).

other than its formal place of incorporation or principal place of business may be so

substantial and of such a nature as to render the corporation at home in that [s]tate," but

characterized such scenario as an "exceptional case" (*id.* at 139 n 19).

## III.

As explained, *Bagdon* was decided in 1916 at the time of *Pennoyer*'s territorial

approach, long before *International Shoe* and the Supreme Court's subsequent cases on

personal jurisdiction.[7]   Thus, despite the trajectory of Supreme Court precedent since

*Bagdon*, the decision may still be read to support the Business Corporation Law's general

design, requiring a foreign corporation to consent to service of process in New York (*see*

*also* CPLR 311 [a] [1]).  But, as our discussion of the evolution of Supreme Court case law

demonstrates, the analysis necessary to determine the *effect* of that service under current

precedent is not the same as it was when Judge Cardozo considered the issue.  In *Bagdon*,

the defendant's consent to service of process had the effect of conferring general

jurisdiction because, at that time, in-state service of process on a designated agent of a

foreign corporation that was doing business in New York was itself sufficient to permit the

exercise of general jurisdiction over the defendant.  Thus, there was no need to rely on a

consent to jurisdiction rationale in *Bagdon*, and our decision did not include any such

---

[7] Notably, we have not cited *Bagdon* since *International Shoe* was decided in 1945.  We last cited *Bagdon* in 1944 for the proposition that the "designation of a public officer upon whom *service* may be made has the same effect as a voluntary consent" (*Pohlers v Exeter Mfg. Co.*, 293 NY 274, 280 [1944] [emphasis added]).  We continued to speak of "a consent to accept service of process," not a consent to general jurisdiction in our courts (*id.*).

analysis. We have never conflated statutory consent to service with consent to general jurisdiction,[8] and the fact remains that, under existing New York law, a foreign corporation does not consent to general jurisdiction in this state merely by complying with the Business Corporation Law's registration provisions.

Inasmuch as our conclusion rests solely on New York law grounds, we have no occasion to address whether consent-by-registration, if it existed in New York, would comport with federal due process under *Daimler*.[9] We therefore express no opinion on the federal due process issue presented by the parties. Instead, as we reject the only basis for jurisdiction preserved below and presented here, namely plaintiffs' theory that Ford and Goodyear consented to general jurisdiction under New York law, we conclude that the motions to dismiss were properly granted.

---

[8] We have adhered to our statutory analysis in the general jurisdiction context, while specifically referencing the relevant Business Corporation Law provisions governing registration and appointment of a local agent. For example, we have explained that "service of process on a foreign corporation authorized to do business in the [s]tate is simple" because "[t]here are no theoretical uncertainties concerning the basis for jurisdiction since the foreign corporation is concededly doing business in the [s]tate and, indeed, has applied for authority for the express purpose of doing so" (*Flick*, 76 NY2d at 57, citing Business Corporation Law § 1304 [a] [emphasis omitted]). We separately stated that "there can be no question that service on . . . the foreign corporation's designated agent is the equivalent of actual service on the foreign corporation" (*id.*, citing Business Corporation Law § 1304 [a] [6]). Again, we did not suggest that consent to service of process constituted a consent to general jurisdiction.

[9] Although the parties cite to proposed legislation that would amend the business registration statutes to expressly state that a foreign corporation consents to general jurisdiction in New York when it registers to do business here, no such language currently exists in the Business Corporation Law. We have no occasion to address the effect of such legislation were it to become law.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

WILSON, J. (dissenting):

Jose Aybar, Jr., a resident of New York, owned a Ford Explorer equipped with Goodyear tires in New York, which was registered to him with the New York Department of Motor Vehicles. He purchased it in New York. On July 1, 2012, he was driving the

- 1 -

Explorer, with members of his family as passengers, on a return trip from a vacation in

Florida back to New York. All passengers were New York residents. On I-85 in

Brunswick County, Virginia, the car crashed and rolled over multiple times. Three

passengers, including an 8-year-old girl, died; three others, including a 14-year-old girl,

were seriously injured. The six passengers, or their estates, filed this suit in New York

against Ford, Goodyear and others. The complaint alleged that the accident was caused by

Ford and Goodyear's negligence. It is undisputed that both Ford and Goodyear: (a) have

registered to do business in New York; (b) conduct a substantial amount of business in

New York; and (c) are not incorporated in New York.

Where can the plaintiffs sue Ford and Goodyear? The following points are

undisputed. Ford could have been sued in Delaware and Goodyear in Ohio because, under

the doctrine of general jurisdiction, those states are their homes, where they can be sued

for anything at all. Ford and Goodyear could both have been sued in Virginia, because the

doctrine of specific jurisdiction allows them to be sued where the accident occurred.

Finally, even when neither general nor specific jurisdiction otherwise exists, a defendant

may be sued wherever it has consented to be sued.

The majority concludes that Ford and Goodyear did not consent to our courts'

general jurisdiction by registering to do business here. The majority rests its conclusion

on three propositions, none of which supports it.

*First*, it conducts a *de novo* statutory interpretation of the Business Corporation Law

("BCL"). The plain text of the statute, the majority observes, does not "condition the right

to do business on consent to the general jurisdiction of New York courts," and any other reading "would improperly amend the statute by adding words that are not there" (majority op at 5-6). Although the majority professes to effectuate the legislature's intent, it eviscerates it. Our court has repeatedly and consistently interpreted the substantively unchanged provision of the BCL beginning 150 years ago, well before *Bagdon v Philadelphia & Reading Coal & Iron Co.* (217 NY 432 [1916]). The immense irony here is that the majority admits, as it must, that the purpose of the statute was to subject foreign corporations to jurisdiction in New York. Yes, the mechanism to do so at that time was through the designation of an agent for service of process, but the unquestioned legislative objective was to grant New York courts jurisdiction over foreign corporations. The majority has confused the means for the end: the history of the statute, as shown through our contemporaneous jurisprudence, shows that the legislature's intent could not be clearer: it achieved the goal of jurisdiction through the means of consent to service.

*Second*, it explains United States Supreme Court jurisprudence on general and specific jurisdiction, despite noting that neither doctrine is relevant to this case (majority op at 4). The question is whether Ford and Goodyear have consented to New York's exercise of personal jurisdiction over them by registering to do business in New York. The majority's position is obfuscated by its traipse through United States Supreme Court cases concerning personal jurisdiction, but it can be stated quite simply: because the evolution of general and specific jurisdiction has rendered jurisdiction by registration-based consent less essential, it is now unavailable. But just as the invention of air travel has not altered

the ability to travel by car, the evolution of general and specific jurisdiction announced by *International Shoe v Washington* (326 US 310 [1945]) has not altered the ability to obtain jurisdiction by consent. Indeed, the majority's determination that consent-based jurisdiction is no longer necessary is precisely the sort of policy-based statutory revision we have long decried.

Finally, the majority reinterprets *Bagdon*. But its novel re-interpretation of *Bagdon* and the registration statute it construed is incorrect, flying in the face of a century of jurisprudence firmly notifying businesses that registration to do business in our state subjects them to personal jurisdiction here.

The majority does not dispute that a defendant may consent to personal jurisdiction where it otherwise would not exist. The majority also does not dispute that actions, such as registering to do business in a state, could constitute consent to personal jurisdiction if that consequence were established by law. The sole question in this appeal, then, is whether New York law establishes that corporate registration equals consent to personal jurisdiction. It has, for a century and a half.

I

As the majority observes, the Business Corporation Law, though requiring out-of-state corporations to designate an agent for service when registering to do business in New York, does not say that in doing so, the corporation is agreeing that New York has personal

jurisdiction over it (majority op at 5-6). The absence of that language is not meaningful. As the majority recognizes through its discussion of *Bagdon*, judicial decisions have the same effect as statutes: each sets out what the law is (*Robert Mitchell Furniture Co. v Selden Breck Const. Co.*, 257 US 213, 216 [1921]). More to the point here, *Bagdon* and several of our predecessor cases have construed the relevant statute as conferring personal jurisdiction on corporations because they registered in New York. Statutory interpretation and construction are the province of the courts (*see id.*; *see also People v Knickerbocker Ice Co.*, 99 NY 181 [1885] ["No doubt it is the province of the court to declare what the law is"]).

The majority's decision to interpret the BCL anew is confounding. When engaging in statutory interpretation, determining "[l]egislative intent is of course paramount" (*Alweis v Evans*, 69 NY2d 199, 205 [1987]). As the majority concedes, the unequivocal legislative intent behind the General Business Law was to provide jurisdiction, and *Bagdon* construed the statute precisely as intended (majority op at 9). The statutory language has not changed, and recent Supreme Court caselaw is irrelevant as to our legislature's intent. The majority makes no claim that any Supreme Court law has rendered consent-by-registration unconstitutional; the Supreme Court has several times upheld its constitutionality and, more recently, made sure to disclaim the effects of its decisions on consent-based jurisdiction.

We have interpreted the BCL at its inception, when it was amended, and several times thereafter. Our consistent interpretation dates back to the nineteenth century.

"[O]nce the courts have interpreted a statute any change in the rule will be left to the Legislature, particularly where the courts' interpretation is a long-standing one" (*Matter of Eckart's Estate*, 39 NY2d 493, 499-500 [1976]). "The construction of a statute accepted for over a century without serious challenge should not be changed by the court without compelling reason" (*In re Schinasi's Will*, 277 NY 252, 265-66 [1938]). The only hint at any explanation for discarding the settled interpretation is that the majority now deems it less necessary than when it was when enacted. That choice is for the legislature, not us.

II

Although the majority relies on *International Shoe*, *Daimler AG v Bauman* (571 US 117 [2014]) and *Goodyear Dunlop Tires Operations, S.A. v Brown* (564 US 915 [2011]), those cases do not support the majority's holding; indeed, the cases themselves tell us so. Jurisdiction may be established in three ways: specific jurisdiction (where the claim arose); general jurisdiction (where the defendant is at home); or consent. The majority recognizes that *International Shoe* substantially expanded the places where personal jurisdiction over defendants could be asserted, mainly by differentiating between specific and general jurisdiction and allowing specific jurisdiction to empower courts located where the claim arose, regardless of the extent of the defendant's presence. The majority points to *Daimler* and *Goodyear* as contracting general jurisdiction and emphasizing specific jurisdiction as the principal means by which personal jurisdiction over foreign defendants (whether

corporate or natural) has been expanded. True though that may be, it has nothing to do with jurisdiction by consent.

At most, the majority demonstrates that the expansion of specific jurisdiction has in many cases provided an alternative way to address the problem of reaching foreign defendants that have caused injury in a state other than their home. The expanded availability of specific jurisdiction may make resort to consent-based jurisdiction less necessary, but it does not impugn its vitality in the least.

Indeed, the Supreme Court has been careful, in the very decisions relied on by the majority, to wall off consent-based jurisdiction theories from its developments around specific and general jurisdiction. In *International Shoe*, the Court tacitly affirmed the validity of consent-based jurisdiction by registration by noting that "'[p]resence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, *even though no consent to be sued or authorization to an agent to accept service of process has been given*" (*id*. at 317 [emphasis added]). In *Daimler*, the Court noted that its holding on general jurisdiction applied only when a corporate defendant "has not consented to suit in the forum" (571 US at 129 [quoting *Goodyear* (564 US at 927-28)]). Likewise, in *BNSF* the Court held that neither general nor specific jurisdiction in that case existed "absent consent"—thus clearly separating its holding from any claim of jurisdiction based on consent (137 S Ct at 1556). In short, whatever the Supreme Court has done with regard to

general and specific jurisdiction, it has been careful not to disturb settled law establishing that a state may demand consent to jurisdiction as a condition of doing business.

III

For more than a century, courts and commentators have widely understood that by registering to do business in New York, a corporation consents to personal jurisdiction in our courts. The majority asserts that *Bagdon* did not create a common-law consent to general jurisdiction (majority op at 9) but rather is merely a case about service. *Bagdon* is not a case about service, nor is it a common-law rule. It is our interpretation of a statute. It is not even our first interpretation of that statute. Until now, all our interpretations of that statute have been consistent: the legislative purpose in requiring foreign businesses to register was to obtain jurisdiction over them in our courts. *Bagdon* is a case about consent—specifically, consent through business registration as a valid basis for general jurisdiction in the courts of New York. By glossing over the history of the law of corporations and personal jurisdiction in the decades before *Bagdon*, the majority has constructed an otherworldly view of our jurisprudence.

A

We must start not with *Bagdon*, not with *Pennoyer v Neff* (95 US 714 [1877]), but instead with *M'Queen v Middletown Mfg. Co.*, 16 Johns 5 (NY Sup Ct 1819). At that time, a corporation was deemed to exist only in its state of incorporation and could be subject to judicial process in that state only, by service on its chief officer (*id.* at 6-7; *see generally*

Edward Quinton Keasbey, *Jurisdiction over Foreign Corporations*, 12 Harv L Rev 1

[1898]).  As explained by the United States Supreme Court:

> "The principle that a corporation must dwell in the place of its
> creation, and cannot, as said by Mr. Chief Justice Taney,
> migrate to another sovereignty, coupled with the doctrine that
> an officer of the corporation does not carry his functions with
> him when he leaves his State, prevented the maintenance of
> personal actions against it.  There was no mode of compelling
> its appearance in the foreign jurisdiction.  Legal proceedings
> there against it were, therefore, necessarily confined to the
> disposition of such property belonging to it as could be there
> found; and to authorize them legislation was necessary"

(*St. Clair v Cox*, 106 US 350, 354 [1882]).  Thus, the challenge was not one of service—

the burden of locating a corporate defendant and physically delivering papers.  The issue

was personal jurisdiction over the corporation.

The Court next described the pressing need to obtain personal jurisdiction over

foreign corporations in America's burgeoning economy:

> "This doctrine of the exemption of a corporation from suit in a
> State other than that of its creation was the cause of much
> inconvenience, and often of manifest injustice.  The great
> increase in the number of corporations of late years, and the
> immense extent of their business, only made this
> inconvenience and injustice more frequent and marked.
> Corporations now enter into all the industries of the country.
> The business of banking, mining, manufacturing,
> transportation, and insurance is almost entirely carried on by
> them, and a large portion of the wealth of the country is in their
> hands.  Incorporated under the laws of one State, they carry on
> the most extensive operations in other States.  To meet and
> obviate this inconvenience and injustice, the legislatures of
> several States interposed, and provided for service of process
> on officers and agents of foreign corporations doing business
> therein. Whilst the theoretical and legal view, that the domicile
> of a corporation is only in the State where it is created, was

admitted, it was perceived that when a foreign corporation sent its officers and agents into other States and opened offices, and carried on its business there, it was, in effect, as much represented by them there as in the State of its creation. As it was protected by the laws of those States, allowed to carry on its business within their borders, and to sue in their courts, it seemed only right that it *should be held responsible in those courts* to obligations and liabilities there incurred"

(*id.* at 355 [emphasis added]; *see also* William Laurens Walker, *Foreign Corporation Laws: The Loss of Reason*, 47 NC L Rev 1, 12 [1968]).

Against that background, to obtain *jurisdiction, not merely service*, over foreign corporations, our legislature first required foreign insurance companies to designate an agent for service of process filed with the Secretary of State (L 1853, ch 463, §§ 14-15; *id.* ch 466, §23) and shortly thereafter expanded that requirement to all foreign corporations (L 1855, ch 279, § 1). The validity of this means of obtaining *jurisdiction* over foreign corporations was repeatedly and conclusively reaffirmed well before *Bagdon*. In *Gibbs v. Queen Ins. Co.* (63 NY 114 [1875]), we considered the effect of the aforementioned statutes in connection with two questions:

> "1. Has the legislature provided a mode in which a citizen of this State . . . may bring an action against [a foreign] company in some of the courts of record of this State? . . . and in what manner shall service of it be made. 2. Does the method provided, and the process and mode of service of it prescribed, give some of the courts of record of this State *such jurisdiction of the matter and of the defendant*, as that they can render a personal judgment which will be valid in this State, and enforceable against any property of the defendant found within it?"

(*id.* at 116 [emphasis added]). We answered both in the affirmative, holding that:

"[T]he legislature of the State has enacted that the defendant, as a prerequisite to doing business in this State, shall designate an attorney or an agent therein upon whom process in any suit to be commenced against it may be served, and [the defendant] has designated a person as such agent, and that service of process against the defendant has been made upon [the agent.] Is not the enactment of the statute by the legislature, a proffer to the defendant of the power to do business in this State, if it will subject itself to the *jurisdiction of our courts, and is not the acceptance of that proffer by the defendant a submission to that jurisdiction*?"

(*id.* at 128 [emphasis added]).  The widely-accepted view was that a "corporation of one State cannot do business in another State without the latter's consent, express or implied, and that consent may be accompanied with such conditions as it may think proper to impose" (*St. Clair*, 106 US at 356; *see also Lafayette Ins. Co. v French*, 59 US [18 How] 404, 407 [1856] ["A corporation created by Indiana can transact business in Ohio only with the consent, express or implied, of the latter State.  This consent may be accompanied by such conditions as Ohio may think fit to impose . . . .  It cannot be deemed unreasonable that the State of Ohio should endeavor to secure to its citizens a remedy, in their domestic forum . . . nor that proper means should be used to compel foreign corporations, transacting this business of insurance within the State, for their benefit and profit, to answer there for the breach of their contracts of insurance there made and to be performed" (citation omitted)]; *Ex parte Schollenberger*, 96 US 369, 376 [1877] ["(T)here cannot be any doubt, as it seems to us, of the jurisdiction of the Circuit Court over these defendant companies. They have in express terms, in consideration of a grant to the privilege of doing business within the State, agreed that they may be sued there; that is to say, that they may be found there for the purposes of the service of process issued 'by any court of the Commonwealth

having jurisdiction of the subject-matter.'  This was a condition imposed by the State upon the privilege granted, and it was not unreasonable"]; *Douglass v Phenix Ins. Co.*, 138 NY 209, 220 [1893] ["(T)he effect of the act of a foreign corporation constituting an agent in another state, upon whom proceedings may be served, done in compliance with the laws of such state in pursuance of a condition imposed, and to enable the corporation to do business in such state . . . (is that) by such act the corporation . . . becomes bound by judgments rendered upon service on the designated agent, because it has consented so to be bound"]).

Responding to our holding in *Demarest v Flack* (128 NY 205, 217 [1891]), which gave effect to a corporation incorporated in West Virginia by New York residents designed to shield themselves from liability for injuries caused by their carnival properties in New York, the legislature took up our hint that "[t]he supervision of a foreign corporation by this state may easily be exercised by imposing terms as a condition of permitting it to do business here."  It amended the General Corporation Law to add sections 15 and 16 (L 1892, ch 687), which provided that foreign corporations could not do business in New York without obtaining a certificate from the Secretary of State, which required the corporation to designate an officer or agent for service of process.  The statute further provided that the failure to do so prevented the foreign corporation from accessing our courts for redress (*id.*).  From the above history, it is plain that the imposition of a requirement of an agent for service of process was implemented to ensure that New York courts would have *jurisdiction* over foreign corporations.  The issue was not one of service *per se*; service was the means by which jurisdiction could be established.

The Corporations Law, including the amendments of 1892, was amended in immaterial ways several times (*see* Frank White, *White on New York Corporations* 762 [M. Bender ed, 4th ed, 1929]). The revision of 1923 required designation of the Secretary of State, rather than a corporate officer, as the agent for service of process. When the Corporations Law was merged into the newly created Business Corporations Law, the provisions described above were incorporated with no substantive changes (*see* Seventh Interim Rep of Joint Legis Comm to Study Rev of Corp Laws, 1963 NY Legis Doc No 29 at 170-71). Thus, the legislative intent to render foreign corporations subject to jurisdiction in our courts by virtue of registering to do business here is unquestionable. Though the word the legislature used to effectuate that intent was "service," under the controlling law consent to "service" meant consent to jurisdiction. The majority's analytical method is analogous to interpreting "Deck the Halls" to celebrate dressing for Pride Month. Neither defendants, the Appellate Division nor the majority can point to any change of heart by our legislature in the 168 years since it first directed that foreign insurance companies registering to do business here were subjecting themselves to jurisdiction in our courts.

B

That history lays bare the majority's reinterpretation of *Bagdon*. In *Bagdon*, a New Yorker sued the Philadelphia & Reading Coal & Iron Company ("PRCI"), a Pennsylvania corporation alleging the breach of a contract arising from Mr. Bagdon's work for PRCI in Pennsylvania (*Bagdon,* 217 NY at 433). PRCI had registered to do business in New York under section 16 of the General Corporations Law, giving it the right to sue in New York

in exchange for subjecting itself to suit here.  As required, PRCI had designated an agent to receive service in New York (*id*.).  But when Mr. Bagdon served the designated agent, PRCI argued that it could not be haled into court in New York because "the plaintiff's cause of action ha[d] no relation to business transacted in New York" but rather "owe[d] its origin to business transacted in Pennsylvania" (*id*. 433-34).  That is, PRCI did not argue that its registration did not constitute consent to jurisdiction; it argued that its consent to jurisdiction was limited to injuries arising from its operations in New York.  Our Court rejected that argument because PRCI had consented to jurisdiction in our courts by registering to do business here.

Writing for a unanimous court, Judge Cardozo held that jurisdiction over PRCI was proper in New York—even though the "cause of action has no relation to business transacted in New York"—because the corporation had registered to do business here (*id*. at 434).  As had been settled by that point for at least 75 years, the act of designating an agent to receive service, a required part of the business registration process, was an act of "real consent" to litigation in New York such that jurisdiction here was proper and consistent with the Due Process Clause of the United States Constitution (*id*. at 437-38).

Contrary to the majority's assertion (majority op at 9), consent is the analytical lynchpin of *Bagdon*.  First, we noted that New York's business registration statute required corporations to designate an agent to receive service in New York:

> "The state of New York has said that a foreign stock corporation . . . shall not do business here until it has obtained a certificate from the secretary of state. . . .  To obtain such a certificate, however, there are conditions that must be fulfilled. One of them is a stipulation, to be filed in the office of the

secretary of state, 'designating a person upon whom process may be served within this state'"

(*id*. at 436 [quoting Gen Corp L § 16)]). The penalty for failing to comply with New York's business registration requirement, we observed, was that the foreign corporation "may not maintain any action in our courts 'upon any contract made by it in this state, unless before the making of the contract it has procured such certificate'" (*id*. [quoting Gen Corp L § 15]). We then emphasized the crucial point—that such a penalty was not so burdensome as to undermine consent:

> "The business, though unlicensed, is not illegal; the contract is not void; it may be enforced in other jurisdictions; all that is lost is the right to sue in the courts of the state . . . . The stipulation is, therefore, a true contract. The person designated is a true agent. The consent that he shall represent the corporation is a real consent"

(*id*.). Because the corporation's consent to receive service in New York was "real," we held that jurisdiction in New York over the defendant was proper even though the subject of the lawsuit was not related to the defendant's business in New York.

Indeed, one year later, we explicitly reaffirmed that portion of *Bagdon*'s holding. Judge Cardozo, again writing for a unanimous Court, announced in *Tauza v Susquehanna Coal Co.*:

> "We hold . . . that the jurisdiction does not fail because the cause of action sued upon has no relation in its origin to the business here transacted. That in principle was our ruling in *Bagdon v. Phila. & Reading C. & I. Co.*"

(220 NY 259, 268 [1917]).  In other words, as we talk about it today, *Bagdon* established "general" personal jurisdiction through consent by registration—jurisdiction no different from that over a New York corporation.  *Tauza* declared *Bagdon* a holding on jurisdiction: do we today know better what Judge Cardozo said about his own opinion a year later?

*Bagdon* does employ the language of whether "*service* [wa]s invalid" in its analysis (*Bagdon*, 217 NY at 433 [emphasis added]).  But understanding "service" in that context to mean only what we think of today as "service"—the delivery of papers on the appropriate person so that sufficient notice is provided to a party—can be done only by ignoring history, by taking our modern definition of "service" and superimposing it over the word's historical meaning.  When, over the course of many decades, our court, the Supreme Court and the courts of many other states discussed imposing on foreign corporations a requirement to designate an agent for "service," they understood that doing so would subject the corporation to jurisdiction by consent.  Corporations understood that too; PRCI's argument—rejected by our Court—was that its consent to jurisdiction was limited to injuries arising from its operations in New York, not that it hadn't consented to jurisdiction at all.  *Bagdon* did not establish a rule that registration (and with it appointment of an agent for service of process) constituted consent to jurisdiction—that rule was long established by our prior precedents and approved by the Supreme Court.  *Bagdon* extended the consent to causes of action unrelated to a defendant's activities in New York.

The majority rests its misinterpretation of *Bagdon* on the proposition that PRCI's "presence in New York was not in dispute" and that it had "conceded that it was doing business in New York" (majority op at 9).  Thus, the majority explains, our court in *Bagdon*

found jurisdiction not because PRCI had consented to it by registering to do business here, but because PRCI had conceded it was present here and then accepted service of process here. The problem with the majority's confection is that actual presence in New York was legally irrelevant at the time because consent-by-registration statutes had rendered them so. Nearly forty years before *Bagdon*, the United States Supreme Court explained:

> "It is unnecessary to inquire whether these several companies were inhabitants of the district. . . . [T]hat question, we think, was settled in *Railroad Company v. Harris*, [79 US (12 Wall.) 65 (1870)]. . . . The Baltimore and Ohio Railroad Company, a Maryland corporation, was authorized by Congress to construct and extend its railroad into the District of Columbia. Harris, having been injured while travelling as a passenger upon the railroad outside of the District, sued the company in the Supreme Court of the District, and caused the writ to be served upon the president of the company within the District. The company objected to the jurisdiction of the court, and insisted that it was neither an inhabitant of nor found within the District. In ruling upon this objection, we held that, although the company was a foreign corporation, it was suable in the District, because it had in effect consented to be sued there, in consideration of its being permitted by Congress to exercise therein its corporate powers and privileges"

(*Schollenberger*, 96 US at 375-376). Thus, given the historical legal import of registering to do business and appointing an agent to receive service, *Bagdon*'s holding is in no way dependent on PRCI's physical presence in New York. Indeed, the majority does not dispute that even today, a corporation with no presence in New York could consent to personal jurisdiction here (majority op at 4 n 1). But this is not that case: like PRCI, Ford and Goodyear admit they are doing business in New York too; Ford and Goodyear concededly have substantial business operations and have deliberately "serve[d] a market

for a product in a State" (*Ford Motor Co. v Montana Motor Co. v Montana Eighth Jud. Dist. Ct.*, 141 S Ct 1017, 1022 [2021]).

In short, a proper reading of *Bagdon* shows that we were not examining whether papers had been delivered in a manner that gave Constitutionally sufficient notice of suit (majority op at 8-10). Rather, in *Bagdon*, we were analyzing whether it was fundamentally fair for a New York court to exercise jurisdiction over a Pennsylvania corporation that had allegedly breached a contract arising from work done in Pennsylvania for that corporation by a New York resident. We emphatically said "yes," because PRCI had *consented to jurisdiction* in our courts by registering to do business in New York.

When one understands the history of corporate structure and liability predating *Bagdon*, the majority's attempt to brush it aside as a case about the "effect" of service falls apart. Before *Bagdon*, without consent, the fact that a foreign corporation did business in New York would not have allowed for jurisdiction over it for causes of action that did not arise from its operations in New York.[1] Mr. Bagdon could not have argued that New York

---

[1] The majority badly misconstrues *Gaboury v Central Vermont Railway Co.* (250 NY 233 [1929]) (majority op at 11 n 5). First, *Gaboury* came to us on a certified question restricted to the identity of the party that had been served: "Was valid service of process in this action made upon the defendant?" (*id*. at 234). Our answer was that, because the railroad corporation was under a receivership ordered by the federal court, service on a corporate officer was ineffective: "an order had been made whereby [the corporate officer] was forbidden to interfere with the receivers who had supplanted him" (*id*. at 237). *Gaboury*, therefore, has no holding related to the sufficiency of doing business in New York as a basis for the assertion of jurisdiction.

Second, as is clear from the Appellate Division decision we reversed, the defendant railroad was deemed to be doing business in the state because a federal statute provided a basis for jurisdiction:

"[T]his action was then brought in Schenectady county, this State, under the Federal Employers' Liability Act ["FELA"]. The action could be brought in

had jurisdiction over PRCI if PRCI had not consented via registration; PRCI could not have argued that service—the delivery of papers providing sufficient notice—was improper once it registered.  The dispute was purely one of jurisdiction: Mr. Bagdon argued that jurisdiction existed by virtue of consent even though the work he performed for PRRI took place in Pennsylvania; PRCI argued that its consent to jurisdiction via registration did not extend to a cause of action based on work done solely in Pennsylvania, even though it conducted unrelated business in New York.

---

> this State, if defendant was doing business within the State [citation to FELA omitted].  Defendant railroad is located, mostly, in Vermont, but extends into Clinton county, this State, where it operates engines and trains in yard service and in switching and making up trains and where it owns property and pays taxes"

(*Gaboury v Cent. Vt. R. Co.*, 225 App Div 145, 146 [3rd Dept 1928]).  There is no reason to think that the doing-business test under FELA was the same as the doing-business test under New York state law at the time; because railroads are engaged in interstate commerce, the federal government has the power to authorize state court jurisdiction over federal claims even where state court jurisdiction might be lacking absent a federal statute.

Finally, even if the tests were the same, the majority has taken words from our decision in *Gaboury* out of context.  We wrote:

> "A foreign corporation, to be subject to the service of process in New York, must have so acted as to have subjected itself to the jurisdiction of the State. It does so act when at the time of service it is doing business within our borders *under the protection of our laws.  Even then, there are nice distinctions as to the extent of its submission when the cause of action is unrelated to the business here transacted*"

(*Gaboury*, 250 NY at 236 [emphasis added] [citing *Bagdon* and *Tauza*]).  The italicized words, omitted by the majority, disprove its interpretation.  "Under the protection of our laws" means that the corporation had registered to do business in New York—otherwise, the corporation could not sue in New York courts and enjoy the protection of our laws.  In addition, as Judge Cardozo was careful to point out, when the cause of action was unrelated to a defendant's business in New York, "nice distinctions" sometimes prevented the assertion of jurisdiction.

C

The majority's suggestion that *International Shoe*, in liberalizing specific jurisdiction, eliminated the need for jurisdiction through consent is both irrelevant and misleading (majority op at 13-14).  It is irrelevant because, while the need for jurisdiction by consent has indeed been reduced, it has not been eliminated by the expansion of specific jurisdiction.  For example, had this accident occurred in New York, before *International Shoe* the only way to assert jurisdiction over these defendants would have been by consent through registration.  Today, if the accident had occurred in New York, specific jurisdiction over Ford and Goodyear would exist in New York.  But reduced need for jurisdiction by consent and legal invalidity of jurisdiction by consent are two wholly different matters.  If *Bagdon* were decided today, a court could find neither general nor specific jurisdiction in New York: the defendant was a Pennsylvania company; the contract was to be performed in Pennsylvania; and the fact that the company had business operations in New York would not have been sufficient to confer general jurisdiction on it.  Thus, there are classes of cases like *Bagdon*—or this case—as to which jurisdiction by consent remains crucial.  Why should these New York plaintiffs be able to sue both Goodyear and Ford in Virginia but not New York?  What superior claim to "fair play and substantial justice" lies in Virginia?

More troublingly, *International Shoe* simply does not say what the majority claims it says.  The Supreme Court said:

> "Finally, although the commission of some single or occasional acts of the corporate agent in a state sufficient to impose an obligation or liability on the corporation has not been thought to confer upon the state authority to enforce it, *Rosenberg Bros. & Co.* v. *Curtis Brown Co.,* 260 U.S. 516,

other such acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit. *Cf. Kane* v. *New Jersey,* 242 U.S. 160; *Hess v. Pawloski, supra.* True, some of the decisions holding the corporation amenable to suit have been supported by resort to the legal fiction that it has given its consent to service and suit, consent being implied from its presence in the state through the acts of its authorized agents. *Lafayette Insurance Co.* v. *French,* 18 How. 404, 407; *St. Clair* v. *Cox, supra,* 356; *Commercial Mutual Co.* v. *Davis, supra,* 254; *Washington* v. *Superior Court,* 289 U.S. 361, 364-365. But more realistically it may be said that those authorized acts were of such a nature as to justify the fiction. *Smolik v. Philadelphia & Reading Co.*, 222 F. 148, 151. Henderson, The Position of Foreign Corporations in American Constitutional Law, 94-95"

(*International Shoe*, 326 US at 318-319). A careful study of the paragraph and the

authorities it cites demonstrates the opposite of the majority's conclusion, namely: a state

may subject foreign corporations to personal jurisdiction as a condition of doing business

within its borders. *First*, the Court contrasted *Rosenberg Bros. & Co. v Curtis Brown Co.*

(260 US 516, 518 [1923]), where the defendant Oklahoma company had "never applied,

under the foreign corporation laws, for a license to do business in New York" and therefore

was not subject to personal jurisdiction here, with three cases involving out-of-state

motorists (not corporations) over whom personal jurisdiction was deemed to exist by virtue

of statutes conditioning use of the roads on registration (*Kane v New Jersey*, 242 US 160

[1916]), or deeming use of the roads as consent (*Hess v Pawloski*, 274 US 352 [1927]), or

holding that consistent with due process, New York could impose liability on the New

Jersey owner of a vehicle who loaned it to a New Jersey resident who drove it into New

York and injured a New Yorker (*Young v Masci*, 289 US 253 [1933]). Those cases establish

the power of states to impose personal jurisdiction as a condition of use of the state's facilities, where the absence of a condition (as in *Rosenberg*) would render personal jurisdiction unavailable.

*Next*, the Court collected several cases (*Lafayette Ins. Co*, 59 US [18 How.] 404; *St. Clair*, 106 US 350; *Commercial Mutual Acc. Co v Davis*, 213 US 245 [1909]; *Washington v Superior Court*, 289 US 361 [1933]) that upheld the assertion of personal jurisdiction over foreign corporations on the basis of the actual or implied appointment of an agent within the state for service of process.  Note, importantly, that the Court did not describe consent in those cases as consent to service only, but rather as "consent to service *and suit*" (*International Shoe*, 326 US at 318 [emphasis added]).

*Finally*, the Court pointedly explained, "those authorized acts were of such a nature as to justify" the finding of jurisdiction (*id*. at 318-19).  The two citations following that sentence, one to (then Federal District) Judge Learned Hand's decision in *Smolik v Philadelphia Reading Coal & Iron Co.* (222 F 148 [SD NY 1915]), the other to a treatise by Gerald Carl Henderson, offer further insight into the Court's conclusion.  In *Smolik*, the defendant (PRCI again) executed a broad written consent to jurisdiction and argued that it should be limited in the same way New York had limited its implied consent to jurisdiction. Judge Hand rejected that argument, holding that whereas the implied consent, "[b]eing a mere creature of justice . . . will have such consent only as justice requires," whereas the "actual consent in the cases at bar has no such latitudinarian possibilities" (*id*. at 151).  Mr. Henderson's book, at the pages cited by the Court, contrasts *Smolik* to Judge Cardozo's decision in *Bagdon*, emphasizing our court's holding that "the actual appointment of an

agent manifests consent quite independently of any law. In the words of Judge Cardozo, speaking for the Court of Appeals, 'The stipulation is, therefore, a true contract. The person designated is a true agent. The consent that he shall represent the corporation is a real consent'" (Henderson at 94-95). In contrasting Judge Hand's and Judge Cardozo's approaches and synthesizing them by stating that the authorized acts of registration realistically justified the exercise of jurisdiction, *International Shoe* reaffirmed the validity and vitality of *Bagdon*'s consent-based jurisdiction.

D

Courts and scholars have routinely read *Bagdon* as establishing jurisdiction by consent through registration (*see, e.g.*, *Serov ex rel. Serova v Kerzner Intern. Resorts, Inc.*, 43 NYS3d 769 [Sup Ct 2016] [collecting cases and scholarship]; *Muollo v Crestwood Vil., Inc.*, 155 AD2d 420, 421 [2d Dept 1989] ["It is true that a foreign corporation is deemed to have consented to personal jurisdiction over it when it registers to do business in New York and appoints the Secretary of State to receive process for it pursuant to Business Corporation Law §§ 304 and 1304"]; *Le Vine v Isoserve, Inc.*, 334 NYS2d 796, 799 [Sup Ct 1972] ["When a foreign corporation is licensed to do business in New York, it consents to be sued on causes of action arising within and without the State." (citing *Bagdon*)]; *Republique Francaise v Cellosilk Mfg. Co.*, 124 NYS2d 93, 99 [Sup Ct 1953], *revd on other grounds* 284 App Div 699 [1st Dept 1954], *revd on other grounds* 309 NY 269 [1955] ["(J)urisdiction which cannot be acquired by law may be conferred by consent of the parties; and even where the consent is given because it must be given in order to obtain desired benefits or avoid undesired discomforts, it still is consent and effective as

such . . . ." (citing *Bagdon*)]; *Brown v Lockheed Martin Corp.*, 814 F3d 619, 640 [2d Cir 2016] ["Jurisdictions other than Connecticut have enacted registration statutes that more plainly advise the registrant that enrolling in the state as a foreign corporation and transacting business will vest the local courts with general jurisdiction over the corporation. The registration statute in the state of New York has been definitively construed to accomplish that end . . . ." (citations omitted)]; Vincent C. Alexander Practice Commentaries, McKinney's Cons Laws of NY, CPLR 301:8 [hereinafter "Alexander Practice Commentaries"] ["Certainly in New York, foreign corporations have been on notice since 1916 that their registration to do business here constitutes consent to the general jurisdiction of the courts."]; Oscar G. Chase, *Consent to Judicial Jurisdiction: The Foundation of Registration Statutes*, 73 NYU Ann Surv Am L 159, 168 [2018] ["New York . . . is one of the states that treats registration as consent to general jurisdiction."]).

On several occasions, the United States Supreme Court has understood *Bagdon* as establishing a consent-based rule for jurisdiction. One year after *Bagdon*, the Court validated general jurisdiction by consent in *Pennsylvania Fire Insurance Co. of Philadelphia v Gold Issue Mining & Milling Co.* (243 US 93, 94 [1917]). In that case, an Arizona corporation filed suit in a Missouri court seeking coverage from a Pennsylvania insurance company that had insured its building in Colorado (*id.*; *see also Gold Issue Min. & Mill. Co. v Pennsylvania Fire Ins. Co. of Phila.*, 267 Mo 524 [1916]). The Pennsylvania defendant was registered to do business in Missouri (*Penn. Fire*, 243 US at 94). The Court held that jurisdiction in Missouri was proper because "when a power actually is conferred by a document, the party executing it takes the risk of the interpretation that may be put

upon it by the courts. The execution was the defendant's voluntary act" (*id*. at 96). That "document" was a power of attorney "filed with the superintendent of the insurance department" in compliance with the governing business registration statute "consenting that service of process upon the superintendent should be deemed personal service upon the company" (*id*.).

Two decades later in *Neirbo Co. v Bethlehem Shipbuilding Corp.* (308 US 165 [1939]), the Court considered New York's business registration statute and reaffirmed that consent through corporate registration is a valid and constitutional basis for general jurisdiction. It reiterated: "A statute calling for such a designation is constitutional, and the designation of the agent 'a voluntary act'" (*id*. at 175 [citing *Penn. Fire* and *Bagdon*]). As Justice Frankfurter explained:

> "It took half a century of litigation in this Court finally to confer on a corporation, through the use of a fiction, citizenship in the chartering state for jurisdictional purposes. Throughout, the mode of thought was metaphorical. The classic doctrine was that a corporation 'must dwell in the place of its creation, and cannot migrate to another sovereignty.' Logically applied, this theory of non-migration prevented suit in a non-chartering state, for the corporation could not be there. And such was the practice of the circuit courts until the opinion of Chief Justice Waite in *Ex parte Schollenberger* displaced metaphor with common sense. The essential difference between the practice which Mr. Justice Nelson initiated at circuit and the decision in *Schollenberger*'s case was not a matter of technical legal construction, but a way of looking at corporations. Men's minds had become habituated to corporate activities which crossed state lines. The fact that corporations did do business outside their originating bounds made intolerable their immunity from suit in the states of their activities. And so they were required by legislatures to designate agents for service of

> process in return for the privilege of doing local business. That service upon such an agent, in conformity with a valid state statute, constituted consent to be sued in the federal court and thereby supplanted the immunity as to venue, was the rationale of *Schollenberger's* case"

(*id.* at 169-170 [citations omitted]).

Our legislature has made it clear, starting in 1853 and reiterated several times thereafter, that its purpose in requiring foreign corporations registering to do business here is to subject them to jurisdiction here. Our court repeatedly construed the statute that way; the Supreme Court acknowledged and supported the theory behind that construction; our lower courts and commentators have understood it that way. Only the majority does not, and to what end? To compel the legislature to re-enact the statute using the contemporary word "jurisdiction" because the majority refuses to recognize that, 150 years ago, "service" meant "jurisdiction"? The majority plainly understands that the legislature's intent when it enacted and re-enacted the registration requirement was to establish jurisdiction over foreign corporations, not to save the cost of a process server.

IV

Contrary to Ford and Goodyear's arguments, personal jurisdiction conferred through consent by registration is neither coerced nor an impermissible burden on interstate commerce.

As the United States Supreme Court has recently articulated, "unconstitutional conditions" cases are ones in which "someone refuses to cede a constitutional right in the face of coercive pressure" (*Koontz v St. Johns Riv. Water Mgt. Dist.*, 570 US 595, 607, 133

S Ct 2586, 2596 [2013]).  Ford and Goodyear have identified no authority supporting their assertion that they are being forced to cede a constitutional right.  Nor do they face coercive pressure.  Ford and Goodyear incorrectly frame their choice as "consent to general jurisdiction or stop doing business in New York."  They are correct they have a choice, which itself undermines their coercion argument.  But their choice is much less severe: it is to consent to personal jurisdiction or forfeit the ability to initiate an action in New York's courts if the court finds that the corporation is doing business without having registered (NY Bus Corp L § 1312).  Indeed, corporations derive the greater benefit in their bargain with the State.  A corporation may do business here without registering—thereby rendering itself immune to suit here on causes of action beyond the jurisdiction of our courts—until the moment it decides it wants to sue in New York, and then it can register.  In addition, nothing deprives a corporation from making non-jurisdictional arguments to move a suit out of New York; for example, *forum non conveniens* remains an available tool to litigants. It is New York State that bears the cost if its residents are unable to recover against an unregistered corporate defendant.

Further, when New York courts have found that a plaintiff foreign corporation is "doing business in New York without having qualified pursuant to BCL § 1312," they have held that the "appropriate remedy was not outright dismissal of the complaint, but a conditional dismissal or a stay affording plaintiff an opportunity to cure this non-jurisdictional defect, i.e., to obtain the requisite authority" (*Tri-Term. Corp. v CITC Indus., Inc.*, 78 AD2d 609, 609 [1st Dept 1980]).  Such a consequence does not render their consent coerced.  Although the majority is correct that BCL § 1303 provides that the Attorney

General "may" initiate suit to restrain a foreign corporation from doing business in the state without registering (majority op at 8 n 4), the concern is overstated. When the legislature added to BCL§ 1303 this "[n]ew ground[] for enjoining the corporation," it noted that "[s]uch action by the attorney-general is permitted where the foreign corporation's authority was obtained through a fraudulent misrepresentation or a concealment of a material fact, or, where it has done or omitted any act for which a domestic corporation could be dissolved . . . ." (*see* Fifth Interim Rep of Joint Legis Comm to Study Rev of Corp Laws, 1961 NY Legis Doc No 12 at 76-77). In other words, BCL § 1303 contemplates the Attorney General's action when a corporation is engaged in some type of illegal conduct— not merely conducting business in New York without registering. The sole lawsuit in which the Attorney General sought to restrain a foreign corporation under BCL § 1303 in the past fifty years confirms that understanding. In that lawsuit, the corporation, in addition to doing business in New York without first registering, was also alleged to have "repeatedly and persistently engaged in conduct amounting to common-law or statutory fraud," "repeatedly and persistently engaged in deceptive acts or business practices," and "repeatedly and consistently engaged in false advertising" (*People ex rel. Cuomo v Nationwide Asset Services, Inc.*, 26 Misc 3d 258, 263 [Sup Ct 2009]). For doing business in New York without first registering, the corporation was "permanently enjoined from doing business in New York State unless and until they obtain authorization to do so" (*id*. at 281). Again, such a consequence does not render a corporation's consent coerced.

Likewise, Ford and Goodyear's interstate commerce claim is without merit. The governing rule, which Ford and Goodyear do not cite, is that when a "statute regulates

even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits" (*Pike v Bruce Church, Inc.*, 397 US 137, 142 [1970]).  Although New York's rule of jurisdiction through consent does impose some burden, it conveys a benefit as well: access to New York's courts.  Ford and Goodyear have not shown how their burden of defending this lawsuit in New York, where their products are regularly sold and used, is "clearly excessive" compared to legitimate local interests, which include leveling the playing field among all corporations that do business here, whether they are foreign or domestic.


V

New York requires that foreign corporations wishing to do business here renew their registrations every two years.  Ford first registered here in 1920, Goodyear in 1956.  They each renewed their registrations many times; both re-registered in 2014.  Plaintiffs filed this lawsuit in 2015.  As regards the disposition of this case, the question is not what this Court decides registration means starting today, but rather what registration meant in 2015, when this suit was filed.

Unquestionably, today's holding puts future registrants on notice that, by registering, they are not consenting to jurisdiction here.  But there is nothing to which Ford and Goodyear could point, or have pointed, to show such a position would have been reasonable in 2015.  Until today, *Bagdon*'s rule of general jurisdiction by consent through

registration was "well settled" (Alexander Practice Commentaries). No intervening Supreme Court case law has overturned it. Ford and Goodyear had been given sufficient notice "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit" (*Daimler*, 571 US at 139 [quoting *Burger King Corp. v Rudzewicz*, 471 US 462, 472 (1985)]). That is, they could have chosen not to do business in New York, or continued to do business in New York without registering and lost only the ability to bring suit in the courts of New York. For reasons of their own, good or bad, they opted to register in New York. Both employ highly sophisticated counsel, who could have (and perhaps did) advise them in 2014 as to the legal effect of New York's registration statute. It would strain credulity to argue that Ford and Goodyear believed they had not, in fact, consented to jurisdiction in our courts—and they have made no such showing nor even such an argument. What the broader record does suggest, however, is that had these plaintiffs brought this suit in Virginia, where the accident occurred but no plaintiff or defendant resided, Ford and Goodyear likely would have claimed that the Virginia courts lacked personal jurisdiction—the position Ford took in 2018, and the United Sates Supreme Court rejected this year, in *Ford v Montana* (141 S Ct 1017).

More than a century ago, our court correctly interpreted our legislature as having ensured that residents of New York, injured by corporations that had registered to do business here and chosen to take advantage of our laws, could seek judicial relief here,

even if the injury took place somewhere else. Query what offends fair play and substantial justice.

Order affirmed, with costs. Opinion by Judge Singas. Chief Judge DiFiore and Judges Fahey, Garcia and Cannataro concur.
Judge Wilson dissents in an opinion, in which Judge Rivera concurs.

Decided October 7, 2021